MARTIN I. MELENDREZ, ESQ.
Nevada Bar No. 7818
JUSTIN R. TARUC, ESQ.
Nevada Bar No. 12500
BRITANNICA D. COLLINS, ESQ.
Nevada Bar No. 13324
**HAWKINS MELENDREZ, P.C.**
9555 Hillwood Drive, Suite 150
Las Vegas, Nevada 89134
Phone: (702) 318-8800
Fax:   (702) 318-8801
mmelendrez@hawkinsmelendrez.com
jtaruc@hawkinsmelendrez.com
bcollins@hawkinsmelendrez.com
*Attorneys for Defendants The Siegel Group of Nevada, Inc.,*
*Boulder II De, LLC, and Boulder II LV Holdings, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN HOY as Special Administrator of the ESTATE OF A.D.J., a male minor (November 17, 2003 – April 25, 2017), and SUSAN HOY as Guardian Ad Litem of A.B.J., a female minor, (December 21, 2005), DIJONAY THOMAS, individually and as heir to A.D.J.,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL D. JONES, individually; CAROLE FALCONE, individually and in her official capacity; PAULA HAMMACK, individually and in her official capacity; COUNTY OF CLARK, a political subdivision of the State of Nevada; DOES I-X, individuals; and ROE CORPORATIONS I-X; DOE CLARK COUNTY DEPARTMENT OF FAMILY SERVICES EMPLOYEES XI-XXX; individually and in their official capacities; BOULDER II DE, LLC, a Delaware Limited Liability Company dba SIEGEL SUITES BOULDER 2; THE SIEGEL GROUP | Case No.: 2:18-cv-01403-RFB-GWF<br><br>**DEFENDANTS THE SIEGEL GROUP OF NEVADA, INC.'S, BOULDER II DE, LLC'S, AND BOULDER II LV HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

1

NEVADA, INC., a Domestic Corporation, dba THE SIEGEL GROUP; BOULDER II LV HOLDINGS LLC, a Nevada Limited Liability Company; DOE EMPLOYEE SIEGEL SUITES I-X,

Defendants.

COME NOW, Defendants BOULDER II DE, LLC dba SIEGEL SUITES BOULDER 2, THE SIEGEL GROUP NEVADA, INC., dba THE SIEGEL GROUP, and BOULDER II LV HOLDINGS LLC, (hereinafter collectively referred to as "Defendants" or "Siegel Defendants"), by and through their counsel of record, Martin I. Melendrez, Esq., and Justin R. Taruc, Esq., of the law firm Hawkins Melendrez, P.C., and hereby submits their Motion to Dismiss Plaintiffs' First Amended Complaint.

This Motion is made and based upon the Federal Rules of Civil Procedure, the following Memorandum of Points and Authorities, all pleadings and papers on file herein, and any oral argument this Honorable Court may entertain at the time of hearing.

DATED this _____ day of March, 2019.

HAWKINS MELENDREZ, P.C.

_____
MARTIN I. MELENDREZ, ESQ.
Nevada Bar No. 7818
JUSTIN R. TARUC, ESQ.
Nevada Bar No. 12500
BRITANNICA D. COLLINS, ESQ.
Nevada Bar No. 13324
9555 Hillwood Drive, Suite 150
Las Vegas, Nevada 89134
*Attorneys for Defendants The Siegel Group of Nevada, Inc., Boulder II De, LLC, and Boulder II LV Holdings, LLC*

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants respectfully request that this Honorable Court grant their instant Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for Plaintiffs' failure to state a claim upon which relief can be granted. In Plaintiffs' First Amended Complaint, Plaintiffs assert the following causes of action against these Defendants: (1) First Cause of Action - Violation of Civil Rights Pursuant to 42 U.S.C. § 1983; (2) Fourth Cause of Action - Wrongful Death; (3) Fifth Cause of Action - Negligent Infliction of Emotional Distress; (4) Seventh Cause of Action - Premises Liability; (5) Eighth Cause of Action - Negligent Hiring, Supervision, and Failure to Warn; (6) Ninth Cause of Action - Vicarious Liability; (7) Tenth Cause of Action - Negligent Security; and (8) Eleventh Cause of Action – Negligence.

As will be discussed further below, this Honorable Court should grant Defendants' instant Motion to Dismiss, as Plaintiffs have failed to state a plausible claim against Defendants upon which relief can be granted.

## II.

## STATEMENT OF FACTS

This wrongful death action stems from Plaintiffs' allegations that Defendants are somehow responsible for the alleged criminal acts committed by minor child A.B.J.'s custodian and father, Paul Jones ("Defendant Jones"), while renting a room at Defendants' property in Las Vegas, Nevada. According to Plaintiffs' First Amended Complaint, two minor children, A.D.J. and A.B.J., were placed into their father Paul Jones' custody. (See generally ECF No. 16.) Plaintiffs allege that Defendants had a policy of performing background checks on all adult individuals prior to leasing an apartment unit, and had Defendants performed a background check on Defendant Jones, it would have been discovered that he was on probation as a result of child abuse convictions against his children. Plaintiffs further assert that Defendants had a policy limiting occupancy of their one-bedroom apartments to three (3) people and that Defendants disregarded said policy with regards to Defendant Jones and his family. Moreover, Plaintiffs also assert that Defendants had a policy of

monitoring utility usage in the units as well as a policy of performing monthly maintenance in all units. Plaintiffs assert that had Defendants adhered to these policies, then A.D.J. would not have been murdered and A.B.J. would not have been abused.

As will be discussed further below, this Honorable Court should grant Defendants' instant Motion to Dismiss, as Plaintiffs have failed to state a plausible claim against Defendants upon which relief can be granted. Even taking all allegations as true as alleged in Plaintiffs' Complaint, a third-party committed the criminal acts that arguably and ultimately caused the death of A.D.J. Defendants' failure to adhere to its policies, if at all, did not cause or contribute to the alleged abuse imposed on A.D.J. and A.B.J. Accordingly, this Court should dismiss all of Plaintiffs' claims against Defendants in their entirety.

### III.
### LEGAL STANDARD FOR MOTIONS TO DISMISS

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### IV.
### LEGAL ARGUMENT

**A.    Plaintiffs' First Cause of Action for Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 Fails As Against Defendants.**

"A § 1983 plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. 2003). Generally, a § 1983 action is inapplicable to private parties, but can

lie against a private party when "he is a willful participant in joint action with the State or its agents." Id. (citing Dennis v. Sparks, 449 U.S. 24 (1980)).

In the past, there have been four tests that courts have used to determine whether a private actor should be liable under § 1983, namely: (1) the public function test; (2) the joint action test; (3) the compulsion test; and (4) the nexus test. Under the public function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." Kirtley, 326 F.3d at 1093. The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental. Id. Second, under the joint action test, courts consider "whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." Id. Third, under the compulsion test, courts consider "whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." Id., at 1094. Fourth, under the nexus test, courts question whether there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself. Id. at 1094-95.

In the case at bar, Plaintiffs' First Cause of Action alleges violations of § 1983. Upon information and belief, it is undisputed that the Siegel Defendants are private actors and are not State entities. Thus, the onus is on Plaintiffs to assert that the Siegel Defendants were willful participants in a joint action with the State or its agents. However, Plaintiffs' Complaint is silent on that matter. Instead, Plaintiffs' Complaint merely states various actions allegedly committed by all Defendants stemming from an official capacity as a state entity. For example, Plaintiffs assert that "Defendants . . . as **state actors** whose edicts or acts may fairly be said to represent official policy, inflicted injuries on A.D.J. and A.B.J. during the execution of Defendants' policy or custom of deliberate indifference to the safety of A.D.J. and A.B.J." (Plaintiffs' Complaint, at 16:16-18) (emphasis added). Plaintiffs' Complaint does not differentiate between the State entities and the private ones, nor does it state the basis of this cause of action against the Siegel Defendants. Indeed, Plaintiffs' Complaint does not

even assert that the Siegel Defendants were willful participants of these alleged constitutional breaches. Thus, at the core of Plaintiffs' allegations, they have failed to assert that the Siegel Defendants' actions served as a public function; that their actions constitute an interdependence with State; that the Siegel Defendants' actions were converted into a State action via coercive influence or 'significant encouragement'; or that there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself. Accordingly, Plaintiffs' Complaint fails as against Defendants, and this Court should grant this instant Motion to Dismiss.

### B.   Plaintiffs' Fifth Cause of Action for Negligent Infliction of Emotional Distress Fail as a Matter of Fact and Law.

In Nevada, for a Plaintiff to succeed on a claim for Negligent Infliction of Emotional Distress, Plaintiff must prove that: (1) Defendant acted in a negligent manner that cause injury to another; (2) that Plaintiff witnessed the accident; (3) that Plaintiff was closely related to the victim; (4) that Plaintiff suffered emotional or physical distress as a result; and (5) proximate cause and damages. Boorman v. Nevada Mem'l Cremation Soc'y, 236 P.3d 4, 8 (Nev. 2010); Luckett v. Doumani, 121 Nev. 44, 110 P.3d 30 (2005); Grotts v. Zahner, 115 Nev. 339, 989 P.2d 415 (1999).

In this case, as noted above, Plaintiffs assert that Defendants were negligent by failing to adhere to various alleged internal protocols, including failure to perform a background check on Defendant Jones. However, as also noted above, a cause of action for Negligent Infliction of Emotional Distress requires that Defendants' negligence cause the injury. Here, even assuming that the Siegel Defendants failed to perform a background check or failed to perform monthly maintenance at the apartment unit, Plaintiffs have not alleged that those actions caused the alleged abuse that ultimately led to the death and abuse of the minor children. Rather, it was the intentional actions of a third-party that caused the injuries. Accordingly, Plaintiffs' Fifth Cause of Action for Negligent Infliction of Emotional Distress fails, and dismissal is appropriate.

/ / /

/ / /

### C. The Court Should Dismiss Plaintiffs' Fourth Cause of Action for Wrongful Death as Against the Siegel Defendants.

Nevada's wrongful death statute is codified in Nevada Revised Statute ("NRS") § 41.085, which provides in pertinent part:

> 2. When the death of any person, whether or not a minor, is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death, or if the wrongdoer is dead, against the wrongdoer's personal representatives, whether the wrongdoer died before or after the death of the person injured by the wrongdoer. If any other person is responsible for the wrongful act or neglect, or if the wrongdoer is employed by another person who is responsible for the wrongdoer's conduct, the action may be maintained against that other person, or if the other person is dead, against the other person's personal representatives.

NRS § 41.085(2) (1999). Notably, the person's death must be caused by the wrongful act of the person against whom the wrongful death claim is made. See id.

In the present case, Plaintiffs assert that the Siegel Defendants were negligent by failing to adhere to various alleged internal protocols, including failure to perform a background check on Defendant Jones and failure to perform the monthly maintenance to the apartment. Plaintiffs assert that had these functions been completed by the Siegel Defendants, then the murder would not have occurred. However, even assuming that the Siegel Defendants failed to perform a background check or failed to perform monthly maintenance at the apartment unit, Plaintiffs have not alleged that those actions caused the alleged abuse that ultimately led to the death and abuse of the minor children. Rather, it was the intentional actions of a third-party that caused the injuries. Indeed, Plaintiffs' Complaint specifically lodges allegations that Defendant Jones had "severely abused" A.D.J., (Plaintiff's Complaint at para. 62, ECF No. 16), and that A.B.J. witnessed her brother's murder, (Plaintiff's Complaint at para. 63, ECF No. 16). Accordingly, even by Plaintiffs' own allegations, it was not the Siegel Defendants' actions that ultimately caused A.D.J.'s death; rather, it was the intentional actions of a third-party that had caused the death. Thus, Plaintiffs' Fourth Cause of Action for Wrongful Death fails, and dismissal is appropriate.

/ / /

/ / /

### D. This Court Should Also Dismiss Plaintiffs' Seventh Cause of Action for Premises Liability as Against the Siegel Defendants.

Plaintiffs' cause of action against the Siegel Defendants grounded in premises liability should also be dismissed. Nevada law clearly establishes that a landlord is not liable for the injury caused by the actions of its tenant. In particular, in FGA, Inc. v. Giglio, 128 Nev. 271, 278 P.3d 490, 501 (2012), the Nevada Supreme Court held that a landlord is not liable for injury caused by the negligent actions of its tenant. Id. (citing Wright v. Schum, 105 Nev. 6111, 781 P.2d 1142 (1989). "However, a landlord is still subject to the duty of all persons to 'exercise reasonable care not to subject others to an unreasonable risk of harm.'" Id. Further, with regards to landlord-tenant relationships, the Nevada Supreme Court clarified:

> A land owner or occupier owes a duty to the people on the land to act reasonably under the circumstances. This court has determined that consideration of the status of the injured person as trespasser, licensee, or invitee is no longer determinative and concluded that "determinations of liability should primarily depend upon whether the owner or occupier of land acted reasonably under the circumstances." Id.

Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 925 P.2d 1175 (1996) (internal citations omitted). The Nevada Supreme Court further stated, "When the issue is protecting a guest from the injury caused by a third person . . . '[t]here is a duty to take affirmative action to control the wrongful acts of third persons only where the occupant of realty has reasonable cause to anticipate such act and the probability of injury resulting therefrom.'" Id. "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur...." Id. (quoting Early v. N.L.V. Casino Corp., 100 Nev. 200, 678 P.2d 683 (1984)).

Given the foregoing, this Court should dismiss Plaintiffs' Complaint in its entirety as against the Siegel Defendants. As noted above, Nevada case law provides that a landlord is not liable for injury caused by the negligent actions of its tenant. FGA, Inc. v. Giglio, 128 Nev. 271, 278 P.3d 490, 501 (2012). Here, then, the Siegel Defendants should not be liable for any actions by the third-parties who caused the actual death of minor A.D.J. Plaintiffs assert that the Siegel Defendants failed to perform a background check or failed to perform monthly maintenance at the apartment unit, and that

such failures caused the alleged abuse that ultimately led to the death and abuse of the minor children. It does not stand to reason that because of the alleged failure by the Siegel Suites to perform a background check or inspect/maintain the apartment that the child abuse would not have occurred. Therefore, the Siegel Defendants cannot be held to the position that they knew or should have known that A.D.J. would allegedly be abused inside the apartment. Thus, this Court should grant Defendants' Motion to Dismiss.

> **E.** **This Court Should Dismiss Plaintiffs' Eighth Cause of Action, Negligent Hiring, Supervision, and Failure to Warn; Ninth Cause of Action for Vicarious Liability; Tenth Cause of Action, Negligent Security; and Eleventh Cause of Action, Negligence.**

In Nevada, for a Plaintiff to prevail on a negligence theory, the Plaintiff must generally show that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach as the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. See Scialabba v. Brandise Const. Co., Inc., 112 Nev. 965 (1996) (citing Perez v. Las Vegas Medical Center, 107 Nev. 1 (1991)). These requirements support the legal maxim that negligence is never presumed, but must be established by substantial evidence. See Gunlock v. New Frontier Hotel Corp., 78 Nev. 182, 185, 370 P.2d 682, 684 (1962) abrogated on other grounds by Foster v. Costco Wholesale Corp., 128 Nev. Adv. Op. 71, 291 P.3d 150 (2012). The mere fact that there was an accident or other event and someone was injured is not sufficient to predicate liability. See id. (citing Snyder v. McDowell, 166 Kan. 624, 203 P.2d 255; Poundstone v. Niles Creamery, 293 Mich. 455. 292 N.W. 367.)

With regards to vicarious liability, "An employer is liable for an employee's acts which the employer authorized or ratified, upon familiar principles of negligence and agency. Vicarious liability, on the other hand, is based on conduct which is not the conduct of the employer but which extends to any and all tortious conduct which an agent performs within the 'scope of employment.'" Busch v. Flangas, 108 Nev. 821, 837 P.2d 438 (1992).

In the instant matter, Plaintiffs assert that Defendants were negligent by failing to adhere to various alleged internal protocols, including failure to perform a background check on Defendant Jones. Here, even assuming that the Siegel Defendants failed to perform a background check or failed

to perform monthly maintenance at the apartment unit, Plaintiffs have not alleged that those actions caused the alleged abuse that ultimately led to the death and abuse of the minor children. Rather, it was the intentional actions of a third-party that caused the injuries. Accordingly, each and every one of Plaintiffs' causes of action that stem from negligence must fail, and this Court should dismiss said claims in their entirety.

Additionally, even assuming that the Siegel Defendants' failure to perform a background check on Defendant Jones or to perform monthly maintenance on the property occurred, it was not such actions that caused A.D.J.'s death; rather, the actions by the third-party caused the death and abuse, as a superseding cause. Nevada courts have repeatedly found, "A negligence action will not stand when there is an intervening cause that in and of itself is 'the natural and logical cause of the harm.' An intervening act is a superseding cause only if it is unforeseeable." Wood v. Safeway, Inc., 121 Nev. 724, 741, 121 P.3d 1026, 1037 (2005). In Wood, the Nevada Supreme Court found that the conduct of a janitorial services company's employee in sexually assaulting a store worker was a superseding cause of the worker's injury, and therefore, the janitorial services company was not liable for the alleged negligence of its employee. See id.

Likewise, in this matter, the actions of a third-party were the superseding cause of the injuries to the minor children. Indeed, Plaintiffs' Complaint specifically lodges allegations that Defendant Jones had "severely abused" A.D.J., (Plaintiff's Complaint at para. 62, ECF No. 16), and that A.B.J. witnessed her brother's murder, (Plaintiff's Complaint at para. 63, ECF No. 16). Accordingly, even if the Siegel Defendants failed to perform the background check and perform inspections, by Plaintiffs' own allegations, it was not the Siegel Defendants' actions that ultimately caused A.D.J.'s death; rather, it was the intentional actions of a third-party that had caused the death. Thus, Plaintiffs' cause of action arising from negligence against the Siegel Defendants must fail.

Moreover, Plaintiffs attempt to impose a new extrajudicial duty upon the Siegel Defendants for self-reporting cases of suspected child abuse. However, the Nevada Legislature in NRS § 432B.220, codified the groups who have an affirmative duty to report child abuse and/or neglect. Therein, the Nevada Legislature requires the following groups to report:

4. A report must be made pursuant to subsection 1 by the following persons:
(a) A person providing services licensed or certified in this State pursuant to, without limitation, chapter450B [emergency medical services], 630 [physicians, physicians assistants], 630A [homeopathic physicians], 631 [dentistry and dental hygiene], 632 [nursing], 633 [osteopathic medicine], 634 [chiropractic physicians and assistants], 635 [podiatric physicians and hygienists], 636 [optometry], 637 [dispensing opticians], 637B [audiologists], 639 [pharmacists], 640 [physical therapists], 640A [occupational therapists], 640B [athletic trainers], 640C [massage therapists], 640D [music therapists], 640E [dietitians], 641 [psychologists, behavior analysts], 641A [marriage and family therapists], 641B [social workers] or 641C [alcohol, drug, and gambling counselors] of NRS.
(b) Any personnel of a medical facility licensed pursuant to chapter 449 of NRS who are engaged in the admission, examination, care or treatment of persons or an administrator, manager or other person in charge of such a medical facility upon notification of suspected abuse or neglect of a child by a member of the staff of the medical facility.
(c) A coroner.
(d) A member of the clergy, practitioner of Christian Science or religious healer, unless the person has acquired the knowledge of the abuse or neglect from the offender during a confession.
(e) A person employed by a public school or private school and any person who serves as a volunteer at such a school.
(f) Any person who maintains or is employed by a facility or establishment that provides care for children, children's camp or other public or private facility, institution or agency furnishing care to a child.
(g) Any person licensed pursuant to chapter 424 of NRS to conduct a foster home.
(h) Any officer or employee of a law enforcement agency or an adult or juvenile probation officer.
(i) Except as otherwise provided in NRS 432B.225, an attorney.
(j) Any person who maintains, is employed by or serves as a volunteer for an agency or service which advises persons regarding abuse or neglect of a child and refers them to persons and agencies where their requests and needs can be met.
(k) Any person who is employed by or serves as a volunteer for a youth shelter. As used in this paragraph, "youth shelter" has the meaning ascribed to it in NRS 244.427.
(l) Any adult person who is employed by an entity that provides organized activities for children, including, without limitation, a person who is employed by a school district or public school.

NRS § 432B.220(4)(a) – (l) (2017). Notably, an innkeeper and/or landlord, such as the Siegel Defendants, is not on the list of those entities required to make a report of suspected child abuse and/or neglect. Thus, to the extent that Plaintiffs assert a duty for the Siegel Defendants to report alleged child abuse/neglect, such assertions fail, pursuant to NRS 432B.220. It follows, then that

because the Siegel Defendants had no duty of reporting, that a breach of that duty could also not occur.

### F. Plaintiffs' Complaint Against The Siegel Group Nevada, Inc., and Boulder II LV Holdings, LLC, Should Be Dismissed Pursuant to Nev. R. Stat. 86.371.

Nev. R. Stat. 86.371 provides that generally, "no member or manager of any limited-liability company formed under the laws of this State is individually liable for the debts or liabilities of the company." Nev. R. Stat. 86.371 (2013). Further, pursuant to Nev. R. Stat. 86.381, "A member of a limited-liability company is not a proper party to proceedings by or against the company, except where the object is to enforce the member's right against or liability to the company." Nev. R. Stat. 86.381 (2015).

In this case, the allegations lodged in Plaintiffs' Complaint against The Siegel Group Nevada, Inc., and Boulder II LV Holdings, LLC, specifically provide:

> 19. Upon information and belief, Defendant Boulder II LV Holdings, LLC, is A Nevada Limited Liability Company and is authorized and doing business in the County of Clark, State of Nevada; was the holding company for Defendant and Managing Member for Defendant Boulder II DE, LLC, that shared common stock ownership, board of directors[,] members, corporate officers, and corporate headquarters with Defendant BOULDER II DE, LLC.
>
> 20. Upon information and belief, Defendant THE SIEGEL GROUP NEVADA, INC., is a Nevada Domestic Corporation, dba THE SIEGEL GROUP, and is the holding company for Defendants BOULDER II LV HOLDINGS, LLC and BOULDER II DE, LLC, with whom its shares [sic] its corporate headquarters.

(Plaintiff's Complaint, at para. 19-20, ECF No. 16.) It is clear that, even taking all allegations as true in Plaintiffs' Complaint, that Plaintiffs' Complaint is silent that either The Siegel Group Nevada, Inc., or Boulder II LV Holdings, LLC, were the owners or operators of the subject premises. Rather, then, pursuant to Nev. R. Stat. 86.371, this Court must dismiss these entities, as they cannot be individually liable for the debts or liabilities of the alleged owner/operator of the subject premises. The dismissal of these two entities, at the very least, is even more warranted, given that the only allegations relative to the relations between The Siegel Group Nevada, Inc., Boulder II LV Holdings, LLC, and Boulder II De, LLC, is that Boulder II LV Holdings, LLC, and The Siegel Group Nevada, Inc., are holding

companies of Boulder II De, LLC. Accordingly, this Court should grant Defendants' Motion to Dismiss in its entirety.

## V.

## CONCLUSION

For the reasons set forth above, Defendants BOULDER II DE, LLC dba SIEGEL SUITES BOULDER 2, THE SIEGEL GROUP NEVADA, INC., dba THE SIEGEL GROUP, and BOULDER II LV HOLDINGS LLC respectfully request that this Court dismiss with prejudice Plaintiffs' First Amended Complaint, as it relates to Defendants BOULDER II DE, LLC dba SIEGEL SUITES BOULDER 2, THE SIEGEL GROUP NEVADA, INC., dba THE SIEGEL GROUP, and BOULDER II LV HOLDINGS LLC, and any and all cause of action set forth therein.

DATED this 28th day of March, 2019.

HAWKINS MELENDREZ, P.C.

MARTIN I. MELENDREZ, ESQ.
Nevada Bar No. 7818
JUSTIN R. TARUC, ESQ.
Nevada Bar No. 12500
BRITANNICA D. COLLINS, ESQ.
Nevada Bar No. 13324
9555 Hillwood Drive, Suite 150
Las Vegas, Nevada 89134
*Attorneys for Defendants The Siegel Group of Nevada, Inc., Boulder II De, LLC, and Boulder II LV Holdings, LLC*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 28th day of March, 2019, a true and correct copy of the foregoing **DEFENDANTS THE SIEGEL GROUP OF NEVADA, INC.'S, BOULDER II DE, LLC'S, AND BOULDER II LV HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was filed and served to the below through the Court's ECF service as follows:

Marjorie Hauf, Esq.
Melanie L. Thomas, Esq.
GANZ & HAUF
8950 W. Tropicana Ave., Suite 1
Las Vegas, Nevada 89147
*Attorneys for Plaintiffs*

Felicia Galati, Esq.
OLSON, CANNON, GORMELY,
ANGULO & STOBERSKI
9950 West Cheyenne Ave.
Las Vegas, Nevada 89129
*Attorneys for Defendants Carole Falcone,
Paula Hammack, Clark County Department of
Family Services, and County of Clark*

                                                    */s/ Martin I Melendrez, Esq.*
                                                    An employee of Hawkins Melendrez, P.C.