ADAM GANZ, ESQ.
Nevada Bar No. 6650
MARJORIE HAUF, ESQ.
Nevada Bar No. 8111
MELANIE L. THOMAS, ESQ.
Nevada Bar No. 12576
GANZ & HAUF
8950 W. Tropicana Ave., Suite 1
Las Vegas, Nevada 89147
Telephone: (702) 598-4529
Facsimile: (702) 598-3626
AGanz@GanzHauf.com
MHauf@GanzHauf.com
MThomas@GanzHauf.com
*Attorneys for Plaintiffs*

-o0o-

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SUSAN HOY as Special Administrator of the ESTATE OF A.D.J., a male minor (November 17, 2003 - April 25, 2017), and SUSAN HOY as Guardian Ad Litem of A.B.J., a female minor, (December 21, 2005), DIJONAY THOMAS, individually and as heir to A.D.J.,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL D. JONES, individually; CAROLE FALCONE, individually and in her official capacity; PAULA HAMMACK, individually and in her official capacity; COUNTY OF CLARK, a political subdivision of the State of Nevada; DOES I-X, individually, and ROE CORPORATIONS I-X; DOE CLARK COUNTY DEPARTMENT OF FAMILY SERVICES EMPLOYEES XI-XXX; individually and in their official capacities; BOULDER II DE, LLC, a Delaware Limited Liability Company dba SIEGEL SUITES BOULDER 2; THE SIEGEL GROUP NEVADA, INC., A Domestic Corporation, dba THE SIEGEL GROUP; BOULDER II LV HOLDINGS, LLC, A Nevada Limited Liability Company; DOE EMPLOYEE SIEGEL SUITES I-X,<br><br>Defendants. | CASE NO. 2:18-cv-01403-RFB-GWF<br><br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS THE SIEGEL GROUP OF NEVADA INC'S, BOULDER II DE, LLC'S, AND BOULDER II LV HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Plaintiffs, SUSAN HOY as Special Administrator of the ESTATE OF A.D.J. and as Guardian

Ad Litem of A.B.J. a minor, and DIJONAY THOMAS individually and as heir to A.D.J., by and

through their attorneys MARJORIE HAUF, ESQ. and MELANIE L. THOMAS, ESQ. of GANZ &

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 1 of 18

HAUF hereby submit their Opposition to Defendants The Siegel Group of Nevada Inc's, Boulder II DE, LLC's, and Boulder II LV Holdings, LLC's (hereinafter collectively referred to as "The Siegel Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint.

DATED this 17th day of April, 2019.

GANZ & HAUF

/s/ Marjorie Hauf, Esq.
_____
MARJORIE HAUF, ESQ.
Nevada Bar No. 8111
MELANIE L. THOMAS, ESQ.
Nevada Bar No. 12576
*Attorneys for Plaintiffs*

## I.   **INTRODUCTION**

The Siegel Defendants' Motion seemingly centers around their interpretation of causation principles, rather than how Nevada law deals with causation.  There is no discussion of foreseeability in the Motion.  These Defendants have essentially argued that because their agents were not personally involved in committing the acts of physical abuse that harmed the Plaintiffs, they are not culpable for any of their own conduct that facilitated an environment where that physical abuse could and did occur.  These Defendants overlook the types of injuries for which damages are being claimed, failing to recognize that the damages are intended to compensation for physical *and* emotional injuries.  As discussed below, the substantive law of the State of Nevada is clear—and provides an avenue of redress against the Siegel Defendants for their undeniable role in allowing the harms to occur to the Plaintiffs.  Plaintiffs have properly pled the claims against these Defendants.  However, should this Honorable Court disagree with Plaintiffs, the remedy should be to permit amendment to the Complaint and not dismissal.

## II.   **STATEMENT OF FACTS**

The following factual allegations in Plaintiffs' First Amended Complaint must be taken as true, and provide a plausible basis for relief against the Siegel Defendants:

62. […] [O]n or about April 24, 2017, […] A.B.J. who informed them that Defendant PAUL JONES had severely abused A.D.J., including, but not limited to beating him repeatedly, causing bleeding on his body and head, putting him in a corner for days and depriving him of food and water for days, and that she was told A.D.J. had run away.

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV  89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 2 of 18

63. Upon information and belief, A.B.J. witnessed her brother's murder.

64. A.B.J. displayed signs of physical and emotional abuse at that time. It is believed that she witnessed the murder of her brother. […]

66. On or about, April 25, 2017, A.D.J.'s body was found, deceased, after a search adjacent to the location of Defendant PAUL JONES' residence [Siegel Suites]. […]

69. […] [O]n or around November 1, 2016, Defendant PAUL JONES and his wife Latoya Williams-Miley lost the apartment they were living in at the time that he was given custody of A.D.J. and A.B.J.

70. Defendant PAUL JONES, his wife Latoya Williams-Miley, and their thirteen children—including A.D.J. and A.B.J.—moved into a one-bedroom apartment at Defendant BOULDER II DE, LLC dba SIEGEL SUITES BOULDER 2.

71. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC had a policy to perform background checks on all adult individuals prior to leasing one of their apartment units.

72. If a background check had been performed on Defendant PAUL D. JONES, Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC would have known that he was on probation as result of child abuse convictions against some of his children.

73. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC had a policy limiting occupancy of their one-bedroom apartments to three people.

74. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC disregarded this policy in allowing Defendant PAUL JONES, his wife Latoya Williams-Miley, and their thirteen children—including A.D.J. and A.B.J.—to move into and remain in a one-bedroom apartment at Defendant BOULDER II DE, LLC dba SIEGEL SUITES BOULDER 2.

75. Had Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC enforced this policy, Defendant PAUL JONES, his wife Latoya Williams-Miley, and their thirteen children—including A.D.J. and A.B.J.—would have been immediately subject to a non-eligible customer/check-out, and A.D.J. would not have been murdered and A.B.J. would not have been abused at the Boulder 2 location.

76. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC had a policy of performing monthly, preventative maintenance in all of the units at the Boulder 2 location. Entrance to the unit is mandatory.

77. Had Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC complied with their monthly preventative maintenance policy, they would have discovered Defendant PAUL JONES, his wife Latoya Williams-Miley, and their thirteen children—including A.D.J. and A.B.J.—living in a one-bedroom apartment.

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

78. Had Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC complied with their monthly preventative maintenance policy, they would have discovered that A.D.J. had visible and significant signs of physical abuse and neglect.

79. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC had a policy of monitoring utility usage in their units, and charging occupants for excessive consumption based on unit type.

80. DOE EMPLOYEE SIEGEL SUITES I was a manager at the Boulder 2 location who was responsible for enforcing Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC occupancy and usage policies, and knew or should have known that Defendant PAUL JONES, his wife Latoya Williams-Miley, and their thirteen children— including A.D.J. and A.B.J. were in violation of the occupancy policies.

81. Had Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC complied with their occupancy policy, they would have evicted Defendant PAUL JONES and/or otherwise discovered that A.D.J. had visible and significant signs of physical abuse and neglect prior to A.D.J.'s death.

82. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC knew that the Boulder 2 location was in a high crime area, and had a duty to provide reasonable security services to protect individuals on their property.

83. […] Defendants THE SIEGEL GROUP NEVADA, INC., BOULDER II LV HOLDINGS, LLC, and/or BOULDER II DE, LLC provided inadequate security services on the Boulder 2 premises.

84. It was foreseeable to all Defendants that Defendant PAUL JONES would commit an act of child abuse at all times relevant herein.

[emphasis added].  ECF No. 16, at ¶¶ 62-64, 66, 69-84.

### III.    LEGAL STANDARD

For purposes of the Siegel Defendants' Motion to Dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "Consequently, there is a strong presumption against dismissing an action for failure to state a claim." *Derzaph v. Wynn Las Vegas, LLC*, 2016 WL 1952314, at *1 (D. Nev. May 3, 2016); citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997).  Defendants have selectively taken allegations from Plaintiffs' First Amended Complaint out of context, and without reading <u>all</u> the material factual allegations as a whole.

A court may dismiss a claim if the plaintiffs "fail to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain

1   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

2   *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,*

3   550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff

4   has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable

5   for the misconduct alleged." *Id.*  If the allegations state plausible claims for relief, such claims survive

6   the motion to dismiss. *Id.,* 556 U.S. at 679.

7       Dismissal for failure to state a claim under FRCP 12(b)(6) is proper only if the allegations do

8   not provide a factual basis for the claims.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545, 127 S. Ct.

9   1955, 1965 (2007).  On a motion to dismiss, a court "presumes that general allegations embrace those

10  specific facts that are necessary to support the claim." *See, Lujan v. Nat'l Wildlife Fed'n,* 497 U.S.

11  871, 889 (1990).  FRCP 8 requires that Plaintiffs' Complaint contains, *inter alia*, the following:

12      (2) a short and plain statement of the claim showing that the pleader is entitled to
13      relief; and

14      (3) a demand for the relief sought, which may include relief in the alternative or
    different types of relief.

15  Fed. R. Civ. P. 8(a).  This standard "does not require detailed factual allegations," but does require

16  more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid

17  of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

18      Plaintiffs' First Amended Complaint only needs to provide the Defendants "with fair notice

19  of what [their] claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys.,*

20  534 F.3d 1116, 1123 (9th Cir. 2008).  The court's "notice pleading requirements do not require more."

21  *Id.*  Even if "it may appear on the face of the pleadings that recovery is very remote and unlikely,"

22  this would still be insufficient to grant a Motion to Dismiss based on FRCP 12(b)(6). *Id., quoting*

23  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002).  The notice pleading standard relies on liberal

24  discovery rules and summary judgment motions to define undisputed facts and issues and to dispose

25  of unmeritorious claims. *Swierkiewicz,* 534 U.S. at 512-514.  Plaintiffs' First Amended Complaint

26  "must be construed so as to do justice." Fed. R. Civ. P. 8(e).

27  ///

28  ///

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 5 of 18

## IV.   LEGAL ARGUMENT AND ANALYSIS

### A. PLAINTIFFS' FIRST CAUSE OF ACTION IS NOT PLED AGAINST THE SIEGEL DEFENDANTS

Plaintiffs were permitted to file their First Amended Complaint adding the Siegel Defendants, and did so on February 5, 2019. *See* ECF No. 16. Plaintiffs obtained permission to file the Amended Complaint by way of stipulation with the original Defendants. *See* ECF No. 15. In preparing the amended pleadings, Plaintiffs inadvertently failed to add amended language to the First Cause of Action to indicate that it did <u>not</u> apply to the Siegel Defendants, despite the substance of the claim being silent on those Defendants.

### B. PLAINTIFFS' FIFTH CAUSE OF ACTION IS PROPERLY PLED AGAINST THE SIEGEL DEFENDANTS

Plaintiff A.B.J. asserts both direct and bystander claims of negligent infliction of emotional distress against the Siegel Defendants. The Nevada Supreme Court has held that damages may be recovered for the infliction of emotional distress in a negligence cause of action, both as a direct claim and as a bystander. "If a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery." *Shoen v. Amerco, Inc.,* 111 Nev. 735, 748, 896 P.2d 469, 477 (1995). "Accordingly, we recognize that the negligent infliction of emotional distress can be an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff." *Id.*

#### 1.   <u>Direct Claim of Negligent Infliction of Emotional Distress.</u>

To establish a direct claim of NIED, a plaintiff must show (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of serious emotional distress causing physical injury or illness, and (3) actual or proximate causation. *Cunningham-Dirks v. Nevada,* 2013 WL 77470, at *9 (D. Nev. Jan. 3, 2013); citing *Barmettler v. Reno Air, Inc.,* 114 Nev. 441, 956 P.2d 1382, 1387 (1998). The Nevada District Court recognized direct NIED claims in *Downs v. River City Grp., LLC,* 2013 WL 6385037, at *2 (D. Nev. Dec. 5, 2013)(quoting and discussing *Shoen v. Amerco, Inc.,* 896 P.2d 469, 477 (Nev. 1995)).

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 6 of 18

1    Whether a defendant was negligent is generally "a question of fact for the jury[.]" *Sparks v.*

2    *Alpha Tau Omega Fraternity, Inc.,* 127 Nev. 287, 296, 255 P.3d 238, 244 (2011); quoting *Rodriguez*

3    *v. Primadonna Company,* 125 Nev. 578, ___, 216 P.3d 793, 798 (2009).  In their First Amended

4    Complaint, Plaintiffs have properly asserted plausible factual allegations from which a jury could

5    find the Siegel Defendants were negligent.  *See* ECF No. 16, at ¶¶ 62-64, 66, 69-84.  Plaintiffs have

6    alleged that both A.D.J. and A.B.J. suffered physical impacts as a result of these Defendants

7    negligence, and A.B.J. has further alleged that she suffered emotional distress and shock.  Plaintiffs

8    allege that the Siegel Suites negligence provided an unsafe and unchecked physical location, where

9    a known and convicted child abuser was permitted to confine, abuse, and ultimately murder a child.

### 2.    Bystander claim of Negligent Infliction of Emotional Distress.

11    An NIED claim under a bystander theory requires a bystander: (1) be closely related to the

12    victim of an accident, (2) be located near the scene of the accident, and (3) suffer a shock resulting

13    from direct emotional impact stemming from the sensory and contemporaneous observance of the

14    accident.  *Crippens v. Sav on Drug Stores,* 114 Nev. 760, 961 P.2d 761, 762 (1998).  A.B.J. is the

15    sister of A.D.J., was present when her brother was relentlessly tortured and abused on a daily basis

16    for months while they were involuntarily confined to a one bedroom apartment with eleven (11) other

17    "siblings," and suffered shock from observing the torture, abuse, and ultimate death of A.D.J.

18    Plaintiffs have sufficiently alleged facts plausible to state a claim against the Siegel Defendants.

19    Plaintiffs have sufficient and plausible factual allegations to establish each of the necessary

20    elements and survive a Rule 12(b)(6) motion.  As with general negligence, bystander NIED is a jury

21    question. *Sparks v. Alpha Tau Omega Fraternity, Inc.,* 127 Nev. 287, 296, 255 P.3d 238, 244 (2011);

22    *see also Rodriguez v. Primadonna Company,* 125 Nev. 578, ___, 216 P.3d 793, 798 (2009).

23    However, should the Court disagree, the appropriate remedy would be to permit amendment of the

24    Complaint, rather than the harsh sanction of dismissal.

25    ///

26    ///

27    ///

28

GANZ&HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 7 of 18

## C. PLAINTIFFS' FOURTH CAUSE OF ACTION FOR WRONGFUL DEATH AGAINST THE SIEGEL DEFENDANTS IS PROPERLY PLED

The Nevada Legislature expressly codified the civil liability of innkeepers like the Siegel Defendants in NRS 651.015, which provides in relevant part as follows:

**Civil liability of innkeepers for death or injury of person on premises caused by person who is not employee.**

1.   An owner or keeper of any hotel [...] is not civilly liable for the death or injury of a patron or other person on the premises caused by another person who is not an employee under the control or supervision of the owner or keeper <u>unless</u>:
(a)  The wrongful act which <u>caused the death or injury was foreseeable</u>; and
(b)  There is a preponderance of evidence that the owner or keeper <u>did not exercise due care for the safety of the patron or other person on the premises</u>.
2.   An owner or keeper of any hotel [...] is civilly liable for the death or injury of a patron or other person on the premises caused by another person who is not an employee under the control or supervision of the owner or keeper if:
(a)  The wrongful act which caused the death or injury was <u>foreseeable</u>; and
(b)  <u>The owner or keeper failed to take reasonable precautions against the foreseeable wrongful act</u>.
The court shall determine as a matter of law whether the wrongful act was foreseeable and whether the owner or keeper had a duty to take reasonable precautions against the foreseeable wrongful act of the person who caused the death or injury.
3.   For the purposes of this section, a wrongful act is not foreseeable unless:
(a)  The owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or
(b)  Prior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice or knowledge of those incidents.

[emphasis added].  NRS 651.015.  Prior to the enactment of this statute, the Nevada Supreme Court delineated these principles in several important cases.

The Nevada Supreme Court held that "a proprietor owes an invitee a duty to use reasonable care to keep the premises in a reasonably safe condition for use."  *Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 1101–02, 864 P.2d 796, 799–800 (1993)(*superseded by statute* (NRS 651.015)); citing *Elko Enterprises v. Broyles,* 105 Nev. 562, 565, 779 P.2d 961, 964 (1989); *Early v. N.L.V. Casino Corp.,* 100 Nev. 200, 203, 678 P.2d 683, 684 (1984).  However, "the proprietor's duty to protect an invited guest from injury caused by a third person is circumscribed by the reasonable foreseeability of the third person's actions and the injuries resulting from the condition or circumstances which facilitated the harm."  *Early,* 100 Nev. at 203, 678 P.2d at 684.  The *Doud* Court discussed Nevada's approval of the position of The Restatement (Second) of Torts which provides:

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the

8950 W. Tropicana Ave., #1
Las Vegas, NV  89147
Phone: (702) 598-4529
Fax: (702) 598-3626

third person are occurring, or are about to occur.  He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual.  <u>If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection</u>.

[<u>emphasis added</u>].  *Doud,* quoting *Restatement (Second) of Torts* § 344 cmt. f (1977); *see Early v. *1102 N.L.V. Casino Corp.,* 100 Nev. 200, 203, 678 P.2d 683, 684 (1984); *see also Abbott v. United Venture Capital, Inc.,* 718 F.Supp. 828, 832–33 (D.Nev.1989); *cf. Craigo v. Circus–Circus Enterprises, Inc.,* 106 Nev. 1, 786 P.2d 22 (1990).

A review of case law that has considered the specific issue of proprietor liability for attacks on patrons occurring on hotel premises reveals that courts have generally followed one of two rules with respect to determining the foreseeability of and hence, duty of a proprietor to protect against such attacks.  The traditional rule provides that only proof of the occurrence of prior similar crimes on or in the immediate vicinity of the area in question will establish sufficient foreseeability to create a duty in its proprietor to protect patrons against subsequent attacks.  The modern trend holds that foreseeability of a violent crime being perpetrated on a patron is not absolutely dependent upon notice of prior crimes of a similar nature occurring on or near the premises, but may also be determined from all of the circumstances present.

"The preliminary inquiry in any case involving innkeeper liability is whether '[t]he wrongful act which caused the death or injury was foreseeable,' and thus, whether a duty of care was owed to the plaintiff." *Racine v. PHW Las Vegas, LLC,* 46 F. Supp. 3d 1028, 1033 (D. Nev. 2014), *aff'd,* 669 F. App'x 845 (9th Cir. 2016); quoting *Smith,* 265 P.3d at 692 (citing NRS 651.015(2)(a)).  Pursuant to NRS 651.015(3), the court "evaluate[s] evidence of '[p]rior incidents of similar wrongful acts' or any other circumstances related to the exercise of 'due care' when imposing a duty under NRS 651.015(2)." *Id.*  The "due care" language allows the court "to consider other circumstances regarding the basic minimum precautions that are reasonably expected of an innkeeper." *Id.*  As further noted by the Nevada Supreme Court in *Smith,* "[t]he legislative history of NRS 651.015(3)(a) likewise indicates that the circumstances surrounding the commission of a wrongful act may provide the

requisite foreseeability for imposing a duty even where no prior incidents of similar wrongful conduct have occurred on the premises." *Id.*

> As understood by this Court, the "prior incidents" inquiry under NRS 651.015 requires a determination whether a pattern exists of similar incidents, and whether the incidents establishing this pattern were known to the innkeeper. The knowledge of such a pattern of incidents places the innkeeper on notice of a particular set of circumstances that increase the likelihood of further similar incidents. This knowledge imposes a duty on the innkeeper to take reasonable precautions to alter those circumstances so as to protect patrons against the foreseeable wrongful act. As an example, a pattern of violent crimes in a particular area of an innkeeper's property (a dark corner of the garage) would render foreseeable that further violent crimes would occur in that particular area.

*Racine,* 46 F. Supp. 3d at 1033–34. Plaintiffs require discovery to determine the full extent of foreseeability in this case. Plaintiffs are certain discovery will show that this property is wrought with incidents of child abuse, domestic violence, and other crimes as well as overcrowded units creating an unsafe environment. Plaintiffs allege this is why the property has policies and procedures in place that would have, and should have, prevented this tragedy had they been followed.

Plaintiffs will be required to prove at trial, to impose liability on the Siegel Defendants, that their:

> [i]njuries were proximately caused by the [hotel]'s breach of its duty to provide adequate security to protect its patrons. [...] Proximate cause, or legal cause, consists of two components: cause in fact and foreseeability. *See Sims v. General Telephone & Electronics,* 107 Nev. 516, 815 P.2d 151 (1991). For purposes of this discussion, cause in fact requires proof that the [hotel]'s failure to provide adequate security was a substantial factor in bringing about [plaintiff]'s injury. The second component, foreseeability, is essentially a policy consideration that limits a proprietor's liability to consequences that have a reasonably close connection with both the proprietor's conduct and the harm that conduct originally created. *Id.*

[emphasis added]. *Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 1105–06, 864 P.2d 796, 801–02 (1993).

The Siegel Defendants claim that Defendant Jones' abuse is an intervening act that relieves them from liability. *See* ECF No. 24, at 7:20-25.

> One causation issue presented by this type of case is whether, assuming negligence on the part of the proprietor, the intervening criminal attack is an effective superseding cause which relieves the proprietor from liability. A criminal attack by a third party is an intervening act; however, such an intervening act is a superseding cause which breaks the chain of causation only to the extent that it is unforeseeable. *See Drummond v. Mid–West Growers,* 91 Nev. 698, 705, 542 P.2d 198, 203 (1975). The Restatement (Second) of Torts takes the position that a third party crime is a superseding cause of the negligence of the actor who created the situation that



8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

afforded the third party the opportunity to commit a crime, unless the actor at the time of the negligence realized or should have realized the likelihood that such a situation might be created and that the third person might avail himself or herself of the opportunity. *See* Restatement (Second) of Torts §§ 448–49 (1965). Further, if the likelihood that a third party might commit the attack is one of the hazards which makes the actor negligent, the actor is not relieved of liability. *Id. See also Orlando Executive Park, Inc. v. Robbins,* 433 So.2d 491 (Fla.1983). We find the Restatement view to be compatible with our prior decisions regarding the scope of a proprietor's duty to protect a patron from and liability for third party attacks. *See Elko Enterprises v. Broyles,* 105 Nev. 562, 779 P.2d 961 (1989); *Early v. N.L.V. Casino Corp.,* 100 Nev. 200, 678 P.2d 683, 684 (1984).

[emphasis added]. *Doud v. Las Vegas Hilton Corp.,* 109 Nev. 1096, 1105–06, 864 P.2d 796, 801–02 (1993).

Accepting all of Plaintiffs' allegations as true, the Siegel Defendants' negligence in failing to provide adequate security created a favorable environment for criminal activity.[1] Evaluating these circumstances, a jury could reasonably decide that a foreseeable risk of harm to Plaintiffs had been created by the negligent security and failure to follow the standard of care required of innkeepers, and set out in the property's own policies and procedures.

As part of the prior risk, a foreseeable intervening force, such as Jones' attacks on A.D.J. and A.B.J., is within the scope of the Siegel Defendants' initial negligence and would not negate their liability. Plaintiffs are confident that a jury could reasonably conclude that the abuse of A.D.J. and A.B.J. was foreseeable. Questions of negligence, proximate cause, and intervening cause are generally questions of fact and not of law and are thus best left for the jury to decide. *See Frances v. Plaza Pacific Equities,* 109 Nev. 91, 847 P.2d 722 (1993); *Brascia v. Johnson,* 105 Nev. 592, 781 P.2d 765 (1989); *Nehls v. Leonard,* 97 Nev. 325, 630 P.2d 258 (1981).

NRS 651.015(3) provides that a wrongful act is not foreseeable unless: (a) the owner failed to exercise due care; or (b) similar prior incidents occurred on the premises and the owner had notice or knowledge of those incidents. In analyzing the "due care" language in the first option, this court has concluded that "due care" allows a judge to "look beyond the existence of similar wrongful acts in determining the existence of a duty," and evaluate "any other circumstances related to the exercise of due care." *Smith v. Mahoney's Silver Nugget,* 127 Nev. 855, 860, 265 P.3d 688, 692 (2011) (internal quotations omitted). "However, unlike in *Mahoney's Silver Nugget,* where the event

---

[1] Negligent security is but one of Plaintiffs' theories against these Defendants.

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

1  occurred in a public area on the casino-lounge floor, this event occurred in the guest room […] an

2  area of heightened security in which guests are more vulnerable to certain crimes, such as robberies

3  or sexual assaults, making such an occurrence foreseeable." *Smith v. Coast Hotels & Casinos, Inc.*,

4  2014 WL 3764810, at *2–3 (Nev. July 29, 2014).

5       The Nevada Supreme Court previously held as follows, regarding foreseeability and

6  causation:

> It was [defendant]'s duty as proprietor of the premises to use reasonable care to keep
> the premises safe for its patrons. […]  In *El Dorado Hotel v. Brown,* we noted that a
> business "proprietor has the duty to control the wrongful acts of third persons where
> he has reasonable cause to anticipate the act and the probability of injury." […]  The
> trial judge in this case, in ruling on the motion for directed verdict, commented that
> "all issues of foreseeability are not issues of law, and that some are indeed issues of
> fact."  We agree. […]  If Commercial Bar employees did or reasonably should have
> anticipated Wolford's acts, then there was an affirmative duty to warn [plaintiffs] or
> protect them from the hazard posed by Wolford's presence on the premises; and the
> jury found that the duty was breached by Elko Enterprises. […].  Elko also claims
> that the trial court erred in giving the following instruction:
>
> If you find that defendant was negligent and that their [sic] negligence was a
> substantial factor in bringing about an injury to the plaintiff but that the immediate
> cause of the injury was the conduct of a third person, the defendant is not relieved of
> liability for such injury if at the time of their [sic] conduct the defendant's employees
> realized that a third person might act as he did where the risk of harm suffered was
> reasonably foreseeable.
>
> Jury Instruction No. 29.  The statement of law given is taken from Nevada Jury
> Instructions 4.06 and from BAJI 3.79.  The instruction tells the jury that a defendant
> can be found negligent even if the injury was caused by a third person, provided that
> the third person's conduct was reasonably foreseeable.  This is a correct statement of
> the law and is not inconsistent, as contended by Elko Enterprises, with our holding
> in *El Dorado.*

20  [emphasis added].  *Elko Enterprises, Inc. v. Broyles Through Rogers,* 105 Nev. 562, 565–66, 779

21  P.2d 961, 964 (1989)(internal citations omitted).

22       The Siegel Defendants clearly envisioned their low rent, weekly hotel, to attract a myriad of

23  different occupants.  Objectively, the large majority of the guests of the Siegel Defendants are low

24  income individuals whom have fallen on tough financial times and need emergent housing at risk of

25  becoming homeless.  The remainder of the guests are likely involved in prostitution, criminal

26  activity, or possibly short-term rentals for business or travel-related purposes.  This data will need to

27  be officially yielded during the course of discovery in this case.  However, the Siegel Defendants

28  represent on their website:

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV  89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 12 of 18



We do background checks because we care.™

https://www.siegelsuites.com/rent-apartment-las-vegas/boulder2-las-vegas-apartments [last accessed Apr. 15, 2019].  Specifically, the Siegel Defendants are representing their properties to be safe from individuals convicted of certain crimes that could present a risk to children staying on the premises, because of the criminal background checks are performed out of "caring" for safety (versus in furtherance of financial interests only).  Had the Siegel Defendants background checked Defendant Jones or Latoya Williams-Miley, they would have discovered child abuse convictions—which in and of themselves are notice of a potentially dangerous situation for children, child abuse and neglect. Those same background checks could have yielded an absence of employment, which would have put these Defendants at an even heightened awareness of the financial straits this family was in—which in and of itself is notice of a potentially dangerous situation for children, fueled by desperation.  Most obviously, had the Siegel Defendants enforced their occupancy policies, they would have identified thirteen (13) children living in a one bedroom apartment under deplorable, unsanitary, and dangerous conditions.

The Siegel Defendants post their safety policies on their website:

Safety Policies

• This is private property intended for use by registered guests.
• There is no illegal activity permitted at any time. Please notify the office if you notice any suspicious activity on property. Registered guests hereby acknowledge that it is a misdemeanor to commit or maintain a public nuisance as defined in NRS 202.450 or to allow any building or boat to be used for a public nuisance. Any person, who willfully refuses to remove such a nuisance when there is a legal duty to do so, is guilty of a misdemeanor. A public nuisance may be reported to the local sheriff's department. A violation of a building, health or safety codes or regulations may be reported to the government entity in our local area such as the code enforcement division of the county/city government or the local health or building departments.
• This is private property: firearms are not permitted in public view and loitering is not allowed. Do not congregate on the stairways or balconies. Children under 14 yrs. old must be supervised by a parent or legal guardian at all times. A 9 p.m. curfew exists for anyone under the age of 18. Walkways and decks must be clear of any personal property; bicycles, grills, etc. cannot be secured to the railings or any outside structure.
• Blankets and foil are not allowed in windows, and skateboards, roller blades, scooters, and bicycles are not permitted on any walkway, sidewalk or near parked vehicles.
• Clark County fire codes prohibit barbecuing except in the designated BBQ areas. No personal barbecues are allowed. Guests must wear shoes at all times when outside of their room.
• Guests acknowledge and agrees that management may run background checks on guests prior to check-in.

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

https://www.siegelsuites.com/info/community-policy [last accessed Apr. 15, 2019].   Had they

enforced those policies, they would have identified criminal activity, building code violations, curfew

violations, and other objective signs of the abuse and neglect of children occurring on their premises.

   For these reasons, Plaintiffs have pled sufficient and plausible factual allegations to survive a

Rule 12(b)(6) motion.   Plaintiffs will require discovery to obtain the specific information to support

their claims, but at the preliminary pleading stage, have alleged plausible claims for relief under a

wrongful death theory of recovery stemming from these Defendants' negligent acts.   However, should

the Court disagree, the appropriate remedy would be to permit amendment of the Complaint, rather

than the harsh sanction of dismissal.

### D.   PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR PREMISES LIABILITY IS PROPERLY PLED.

   Plaintiffs have properly pled all of their negligence-based causes of action against these

Defendants.   "In an innkeeper negligence action, a plaintiff must establish the four basic elements of

negligence: '(1) duty, (2) breach, (3) proximate causation, and (4) damages." *Sierra v. Desert Palace,*

*Inc.,* 2014 WL 4796938, at *6 (D. Nev. Sept. 26, 2014); quoting *Smith v. Coast Hotels and Casinos,*

Inc., 2014 WL 3764810, at *2 (Nev. July 29, 2014) (unpublished disposition) (quoting *Estate of Smith*

*v. Mahoney's Silver Nugget, Inc.,* 265 P.3d 688, 690 (Nev. 2011).   An innkeeper's "duty to prevent

wrongful conduct by third parties "to protect patrons from foreseeable wrongful acts.'" *Id.* (citing

NRS 651.015(2)).

   Plaintiffs have already discussed plausible grounds for relief under NRS 651.015 in earlier

sections.   Notwithstanding, and in reiteration:

- Had these Defendants followed their own policies they would have direct and actual knowledge of Defendant Jones' and his wife's (Ms. Williams-Miley) child abuse convictions and current probation status.

- Had these Defendants followed their own policies they would have direct and actual knowledge of Defendant Jones' and his wife's (Ms. Williams-Miley) violation of occupancy requirements, they would have refused to allow fifteen (15) people to reside in a one-bedroom apartment.

- Had these Defendants followed their own policies they would have direct and actual knowledge of Defendant Jones' and his wife's (Ms. Williams-Miley) horrifying physical abuse, as they would have entered the unit and observed A.D.J. in a state needing urgent medical intervention, or confined to a corner in a standing position in soiled clothes, while being beaten with objects and by other children.

GANZ & HAUF

8950 W. Tropicana Ave., #1
Las Vegas, NV  89147
Phone: (702) 598-4529
Fax: (702) 598-3626

Page 14 of 18

- Had these Defendants followed their own policies they would have direct and actual knowledge of Defendant Jones' and his wife's (Ms. Williams-Miley) warehousing of thirteen (13) children without adequate food, water, and clothing.

Simply put, the Siegel Suites Defendants' conduct, provided an unchecked and uninterrupted location for torture and abuse that would have otherwise been halted and possibly outright prevented had they enforced their policies and fulfilled their legal security obligations. For these reasons, Plaintiffs have sufficient and plausible factual allegations to survive a Rule 12(b)(6) motion. However, should the Court disagree, the appropriate remedy would be to permit amendment of the Complaint, rather than the harsh sanction of dismissal.

### E. PLAINTIFFS' REMAINING NEGLIGENCE-BASED CLAIMS IN THEIR EIGHTH THROUGH ELEVENTH CAUSES OF ACTION WERE PROPERLY PLED AGAINST THESE DEFENDANTS

In Nevada, it is well established that a reasonable person owes no duty to control the dangerous conduct of another or to warn others endangered by the dangerous conduct of another, unless "(1) there is a special relationship between the defendant and the dangerous person; and (2) the harm created by the defendant's conduct is foreseeable." *Peterson v. Miranda,* 2014 WL 3611833, at *4 (D. Nev. July 11, 2014); citing *Lee v. GNLV Corp.,* 117 Nev. 291, 22 P.3d 209, 212 (2001); *see also, Sims v. General Telephone & Electric,* 107 Nev. 516, 815 P.2d 151, 157 (1991). Here, the special relationship stems from the Siegel Defendants' innkeeper status.

The Siegel Defendants merely cite the elements of negligence and a case on vicarious liability with no development to the facts of this case, in order to meet the burden under Rule 12(b)(6). This simply is not enough. Notably, these Defendants ignore the implications that their failure to follow their own internal safety protocol had in bringing about the harm to the Plaintiffs. Plaintiffs have pled these allegations based on information available to them without the benefit of discovery. The Siegel Defendants are responsible for the actions of their employees—which here, failed to identify, protect, and prevent foreseeable injury to A.D.J. and A.B.J. The policies referenced in Plaintiffs' Amended Complaint are safety policies, intended to protect individuals on the Siegel Suites premises, like A.D.J. and A.B.J.

///

///

Plaintiffs never attempted to impart any mandatory reporting requirements on these Defendants, despite the representation to the contrary in the Motion. *See Motion,* at 10:24-12:2. Allegations related to mandatory reporting were made against the Clark County Defendants. Rather, there existed a moral duty—emboldened by the Siegel Defendants' own safety policies and reflected in the statutory and case law authority—to prevent harm and protect A.D.J. and A.B.J. for foreseeable injury on the Siegel premises.

Though set forth in earlier sections, the analysis results in the same outcome: Plaintiffs have pled sufficient and plausible factual allegations to survive a Rule 12(b)(6) motion. However, should the Court disagree, the appropriate remedy would be to permit amendment of the Complaint, rather than the harsh sanction of dismissal.

## F.   THE SIEGEL GROUP NEVADA, INC. AND BOULDER II LV HOLDINGS, LLC ARE PROPER PARTIES TO THIS ACTION

The Siegel Defendants misstate the breadth of the allegations made against The Siegel Group Nevada, Inc. and Boulder II LV Holdings, LLC. *See Motion,* at 12:3-13:2. Plaintiffs have substantive allegations pled in paragraphs 71-84 of their First Amended Complaint. Notwithstanding, Siegel Suites is a multi-state, low income housing provider, that likely shares common policies and procedures, practices, and oversight. Plaintiffs are entitled to conduct discovery into the true nature of the relationship and the role in which all of the Siegel Defendants are responsible for Plaintiffs' injuries. The Nevada statutes cited by the Siegel Defendants do not operate to preclude imposition of liability for the acts and omissions alleged by Plaintiffs, rather they operate to prevent standalone liability based solely on the corporate relationship between these entities.

Plaintiffs submit that additional discovery is necessary into the exact and true relationships of these parties, and how the Defendants' *collective* conduct caused injury to the Plaintiffs. **All of the Siegel Suites entities share one (1) website, with common policies and procedures, with common rental "rules," and are represented to be one indivisible entity.[2]** The Siegel Defendants have offered nothing to the contrary, no evidence, no exhibits, no affidavits—nothing. Instead, they hang

---

[2] https://www.siegelsuites.com/# [last accessed Apr. 15, 2019].

Ganz & Hauf

8950 W. Tropicana Ave., #1
Las Vegas, NV  89147
Phone: (702) 598-4529
Fax: (702) 598-3626

on paragraphs 19-20 wherein Plaintiffs have alleged the jurisdiction over these Defendants, "upon information and belief." Notwithstanding these procedural allegations, Plaintiffs have substantively alleged these entities' involvement in the injury-producing events at issue in this case. Plaintiffs believe there will be sufficient facts available to pierce any corporate veil necessary to attach liability to <u>all</u> Siegel Defendants.

For these reasons, Plaintiffs have sufficient and plausible factual allegations to survive a Rule 12(b)(6) motion. However, should the Court disagree, the appropriate remedy would be to permit amendment of the Complaint, rather than the harsh sanction of dismissal.

## V.    **CONCLUSION**

The interests of justice dictate that Plaintiffs be permitted to conduct discovery and further develop their claims against the Siegel Defendants. There is no statute of limitations issue on the minor's claims. The factual allegations made against these Defendants are for plausible and actionable claims for relief. For these reasons, Plaintiffs respectfully request that this Honorable Court deny the Defendants' motion in its entirety.[3]

DATED this 17th day of April, 2019.

GANZ & HAUF

*/s/ Marjorie Hauf, Esq.*

_____
MARJORIE HAUF, ESQ.
Nevada Bar No. 8111
MELANIE L. THOMAS, ESQ.
Nevada Bar No. 12576
*Attorneys for Plaintiffs*

---

[3] With the exception of clarifying that Plaintiffs' § 1983 claims were not pled as to the Siegel Defendants.

8950 W. Tropicana Ave., #1
Las Vegas, NV 89147
Phone: (702) 598-4529
Fax: (702) 598-3626

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on April 17, 2019, I served a true and correct copy of the foregoing

3  **PLAINTIFFS' OPPOSITION TO DEFENDANTS THE SIEGEL GROUP OF NEVADA**

4  **INC'S, BOULDER II DE, LLC'S, AND BOULDER II LV HOLDINGS, LLC'S MOTION TO**

5  **DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** on the following parties by

6  electronic service through the CM/ECF system:

7

8  MARTIN I. MELENDREZ, ESQ.
    Nevada Bar No. 7818

9  JUSTIN R. TARUC, ESQ.
    Nevada Bar No. 12500

10  BRITIANNICA D. COLLINS, ESQ.
    Nevada Bar No. 13324

11  **HAWKINS MELENDREZ, P.C.**
    9555 Hillwood Drive, Suite 150

12  Las Vegas, NV 89134
    Telephone: (702) 318-8800

13  Facsimile: (702) 318-8801

14  Email: mmelendrez@hawkinsmelendrez.com

15          jtaruc@hawkinsmelendrez.com
          bcollins@hawkinsmelendrez.com

16  *ATTORNEYS FOR DEFENDANTS*
    *THE SIEGEL GROUP OF NEVADA, INC.,*

17  *BOULDER II DE, LLC AND BOULDER II LV HOLDINGS, LLC*

18

19  FELICIA GALATI, ESQ.
    Nevada Bar No. 7341

20  **OLSON, CANNON, GORMLEY, ANGULO**
    **& STOBERSKI**

21  fgalati@ocgas.com

22  9950 W. Cheyenne Ave.
    Las Vegas, Nevada 89129

23  *ATTORNEYS FOR DEFENDANTS*
    *COUNTY OF CLARK, CAROLE FALCONE, AND*

24  *PAULA HAMMACK*

25                  */s/ Colleen Crawford*

26                  _____
                  *An Employee of Ganz & Hauf*

27

28

