UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SUSAN HOY, et al,

      Plaintiffs,

     v.

PAUL D. JONES, et al,

      Defendants.

Case No. 2:18-cv-01403-RFB-EJY

**ORDER**

## I.     INTRODUCTION

Before the Court are Defendants Boulder II De, LLC, Boulder II LV Holdings, LLC, and The Siegel Group Nevada, Inc.'s ("The Siegel Defendants") Motion to Dismiss (ECF No. 24), Defendants County of Clark, Carole Falcone, and Paula Hammack's ("The County Defendants") Motion for Summary Judgment (ECF No. 41), and various Motions for Leave to File Exhibits Under Seal (ECF Nos. 42, 48, 50).

## II.     PROCEDURAL BACKGROUND

Defendants filed the Petition for Removal on July 27, 2018. ECF No. 1. An amended complaint was filed on February 5, 2019. ECF No. 16.

On March 28, 2019 Defendants Boulder II De, LLC, Boulder II LV Holdings, LLC, and The Siegel Group Nevada, Inc. filed the instant Motion to Dismiss. ECF No. 24. Plaintiffs responded on April 17, 2019. ECF No. 33. Defendants replied on April 22, 2019. ECF No. 34.

On August 2, 2019, Defendants Clark County, Carole Falcone, Paula Hammack filed the instant Motion for Summary Judgment and instant Motion for Leave to File Under Seal. ECF Nos. 41, 42. Plaintiffs responded on August 31, 2019 and filed the instant Motion for Leave to File

1   Exhibits Under Seal. ECF Nos. 47, 48. Defendants replied on September 20, 2019 and filed the

2   instant Motion for Leave to File Exhibits Under Seal. ECF Nos. 49, 50.

3       Written discovery was stayed on November 6, 2019 pending the outcome of <u>State of

4   Nevada v. Paul Darell Jones</u>, Case No. C-15-304217-1. ECF No. 53.   A second stipulation to

5   extend the stay pending the outcome of the criminal proceeding was granted on February 6, 2020.

6   ECF No. 59.

7

8       **III.   FACTUAL BACKGROUND**

9           **a. Alleged Facts**

10      The following facts are as alleged in the complaint. ECF No. 1-2.

11      On or about June 8, 2016, A.D.J., born November 17, 2003, and A.B.J., born December

12   21, 2005, were in the custody and control of DFS, and placed in the care and home of Defendant

13   Jones, and under the supervision of the County Defendants.

14      County Defendants placed A.D.J. and A.B.J. in Defendant Jones' home without completing

15   a criminal background check and, without verifying the identities of the adults living in the home.

16   Had such a check been conducted it would have revealed that Jones was on probation related to a

17   charge of child abuse.

18      ADJ and ABJ were under the protection of Nevada laws and regulations designed to protect

19   them while in custody. ABJ and ADJ had the right pursuant to NAC 432B.405 to visit with their

20   caseworker monthly and at least every month, be visited by their caseworker in their placement

21   home to ensure their safety. They did not receive the required visits and Defendant Jones was

22   therefore able to abuse and neglect them, the discovery of which would have mandated removal

23   from his care.

24      Defendants placed A.D.J. and A.B.J. with Defendant Jones despite the fact that he had been

25   charged with gross misdemeanor child abuse and was on probation for abusing one of his children

26   with his present wife.

27      Due to his child abuse charge, Defendant Jones was required to have a hearing to show he

28   had undergone therapy or counseling prior to having any visitation with A.D.J. and/or A.B.J. No

2

1   hearing took place prior to ABJ and ADJ's placement in his home. Jones' home was unsafe for

2   ABJ and ADJ because they were subjected to neglect/abuse.

3   　　　　On or about March of 2017, the school A.D.J. attended contacted Clark County Child

4   Protective Services ("CPS"), a division of the Department of Family Services ("DFS"), to report

5   educational neglect after A.D.J. had not attended school for approximately 3 months.

6   　　　　Defendant Jones told CPS that A.D.J. ran away from home and that Jones filed a missing

7   person report.

8   　　　　Thereafter in March or April of 2017, Defendant Jones was sent to jail for violating his

9   probation for the above-mentioned child abuse charge.

10   　　　　In approximately April of 2017, Defendant Falcone called Plaintiff Thomas and told her

11   that A.D.J. had run away from Defendant Jones' home. Upon inquiry, Plaintiff Thomas found out

12   that Defendant Falcone did not know if Defendant Jones actually filed a missing person report

13   regarding A.D.J., or not. Defendant Falcone subsequently became aware that Defendant Jones did

14   not file a missing person report regarding A.D.J., and Defendant Falcone did not file one herself.

15   　　　　Approximately a week later, on or about April 24, 2017, A.D.J. and A.B.J.'s maternal

16   grandmother along with their aunt went to the children's school and saw A.B.J. who informed

17   them that Defendant Jones had severely abused A.D.J., including, but not limited to beating him

18   repeatedly, causing bleeding on his body and head, putting him in a corner for days and depriving

19   him of food and water for days, and that she was told A.D.J. had run away. ABJ witnessed her

20   brother's murder and displayed signs of physical and emotional abuse.

21   　　　　The children's aunt filed a missing person report regarding A.D.J. on or about April 24,

22   2017.

23   　　　　On or about, April 25, 2017, A.D.J.'s body was found after a search adjacent to the location

24   of Defendant Jones' residence.

25   　　　　On or around November 1, 2016, Defendant Jones and his wife Latoya Williams-Miley

26   lost the apartment they were living in at the time that he was given custody of A.D.J. and A.B.J.

27   ///

28   ///

3

1    Defendant Jones, Williams-Miley, and their thirteen children—including A.D.J. and

2    A.B.J.—moved into a one-bedroom apartment at Defendant Boulder II De, LLC, dba Siegel Suites

3    Boulder 2.

4    Defendants The Siegel Group Nevada, Inc., Boulder II LV Holdings, LLC, and/or Boulder

5    II De, LLC had a policy to perform background checks on all adult individuals prior to leasing one

6    of their apartment units. If a background check had been performed, Defendants would have

7    known Jones was on probation for child abuse.

8    Defendants disregarded their policy limiting occupancy of one-bedroom apartments to

9    three people when they allowed Jones, his wife, and their thirteen children including ABJ and ADJ

10   to move into a one bedroom.

11   Had the policy been enforced, the family would have been subject to a non-eligible

12   customer/check out, ADJ would not have been murdered and ABJ would not have been abused at

13   the Boulder 2 location.

14   Had Defendants complied with their policy of performing monthly preventative

15   maintenance in all units, they would have discovered the family living in a one bedroom and that

16   ADJ had visible and significant signs of physical abuse and neglect.

17   Defendants also had a policy of monitoring utility usage and charging for excessive

18   consumption.

19   Doe Employee Siegel Suites I was manager at the Boulder 2 location knew or should have

20   known the family were in violation of the occupancy policies. Had the policy been followed, the

21   family would have been evicted and/or it would have been discovered that ADJ had visible and

22   significant signs of physical abuse and neglect prior to ADJ's death.

23   Defendants knew the Boulder 2 location was in a high crime area and had a duty to provide

24   reasonable security services to protect individuals on their property, which they failed to do.

25   It was foreseeable Jones would commit child abuse.

26   Defendant BOULDER II DE, LLC, is a Delaware Limited Liability Company dba Siegel

27   Suites Boulder 2, owns and operates the property located at 3625 Boulder Highway, Las Vegas,

28   / / /

Nevada 89121, which is a flexible stay apartment complex offering furnished apartments, short terms apartments, cheap studio apartments, and temporary housing.

Defendant Boulder II LV Holdings, LLC, is a Nevada limited liability company and is authorized and doing business in the County of Clark, State of Nevada; was the holding company for Defendant and Managing Member for Defendant Boulder II De, LLC, that shared common stock ownership, board of directors members, corporate officers, and corporate headquarters with Defendant Boulder II De, LLC. BOULDER II DE, LLC.

Defendant The Siegel Group Nevada, Inc. is a Nevada domestic corporation, dba The Siegel Group, and is the holding company for Defendants Boulder II LV Holdings, LLC and Boulder II De, LLC, with whom it shares its corporate headquarters.

DOE Employees Siegal Suites I-X were at all times relevant hereto, employees and/or agents of Defendants The Siegel Group Nevada, Inc., Boulder II LV Holdings, LLC, and/or Boulder II De, LLC, and were and are residents of County of Clark, State of Nevada, who were working in the course and scope of their employment at the time of all actions and inactions complained of herein.

### b. Undisputed Facts

The following facts are undisputed as to Defendants County of Clark, Carole Falcone, and Paula Hammack's Motion for Summary Judgment (ECF No. 41).

Plaintiff Dijonay Thomas is the natural mother of ADJ and ABJ. Defendant Paul Jones is the natural father of ABJ and ADJ. ECF No. 43-3 at 2.

ABJ and ADJ were placed in protective custody on April 20, 2016. ECF No. 43-3 at 3.

On April 22, 2016, a preliminary protective custody hearing was held by Judge Hardcastle, and the Court determined that ADJ and ABJ should remain in protective custody due to a concern that their mother could not provide adequate supervision. ECF No. 43-3 at 3.

Judge Hardcastle found it was in the best interests of the children to place them together with their maternal grandmother. ECF No. 43-3 at 3-4.

On April 25, 2016, Family Services Specialist Supervisor Dona Ford conducted a background check on Jones' wife Latoya Williams and noted Williams had an open case for "Physical Risk Abuse Neglect of the children in her home, and her husband Paul, had the allegation of Physical Risk Abuse - Bruises Cut of children in their home." ECF No. 47-1 at 8. On May 10, 2016 ABJ and ADJ's case was transferred from Clark County DFS Casework Scott to DFS Specialist Wuelzer. ECF No. 47 at 7.

On May 11, 2016 a Plea Hearing was held by Hearing Master Gibson. ECF No 47-1 at 9. Both Plaintiff Thomas and Defendant Jones were present. Id. Jones expressed interest in gaining custody of ABJ and ADJ, but the Deputy District Attorney alerted the Court to Jones' previous child abuse conviction and Hearing Master Gibson told Jones it would not be possible. Id.

On May 23, 2016, District Attorney filed a Second Amended Petition stating that Thomas's cognitive deficiencies and mental illness were affecting her ability to provide adequate care, complicated by her pregnancy and the fact that she was not currently taking medication. ECF No. 43-4 at 2. The Petition also stated that Defendant Jones had been convicted of child abuse, neglect, or endangerment and was on probation for two years, and was not current on child support payments. Id. at 3. The Petition therefore requested that ABJ and ADJ be declared wards of the Court. Id.

On June 8, 2016, the Second Amended Petition was dismissed as to Defendant Jones only, as recommended by Hearing Master Gibson and ordered by Judge Hoskin. ECF No. 43-6 at 3-4. The order dismissing the Second Amended Petition found that Jones had pled guilty to child abuse, neglect, or endangerment on February 19, 2015, and that in case J-15-335662-P1, the presumption as to his ability to care for his children in light of his conviction had been overcome, and on August 15, 2015, he and his wife Latoya Williams were reunited with their children in that companion case. ECF No. 43-6 at 3. The order further found that wardship was terminated in case J-15-335662-P1 on January 5, 2016 and Jones and Williams were not required to complete a class at Red Rock Counseling. ECF No. 43-6 at 3. The order also found that Jones' child support payment had been suspended due to his reliance on TANF. ECF No. 43-6 at 3.

1    On June 8, 2016, as a result of the dismissal of the Second Amended Petition by Hearing

2  Master Gibson, ABJ and ADJ were released to Jones. ECF No. 43-1 at 6.

3    Based on the dismissal of the Second Amended Petition, ABJ and ADJ's case was closed

4  by DFS Specialist Brandy Wuelzer "due to reunification with their natural father." ECF No. 47-1

5  at 15.

6

7                                   **c.  Disputed Facts**

8    The following facts are disputed as to Defendants County of Clark, Carole Falcone, and

9  Paula Hammack's Motion for Summary Judgment (ECF No. 41).

10    The parties dispute whether ABJ and ADJ were in the custody, control and/or supervision

11  of the County Defendants once they were in the home of their father, Defendant Jones.

12    According to County Defendants, the children were not in their custody, control, and/or

13  supervision once in Defendant Jones' home. While a Second Amended Petition was filed against

14  Plaintiff Thomas and Defendant Jones on May 23, 2016, the Family Court dismissed the petition

15  on June 8, 2016 against Defendant Jones, released ADJ and ABJ to him, and closed the case. ECF

16  No. 41 at 4-5. Therefore, they were not "placed" with Jones but returned to his care, and no longer

17  in the custody, control and/or supervision of Jones as of June 8, 2016. Id. at 5.

18    Plaintiffs dispute this. They argue the County Defendants had an obligation to ensure

19  placement options before the Court were appropriate and that all relevant information was

20  provided to the Court. ECF No. 47 at 12-13. Further, they state no efforts were taken to determine

21  the level of supervision Jones would provide, nor whether it would be appropriate or safe for the

22  children to be placed with him. Id. at 13. They further state the County Defendants never attempted

23  to contact the Division of Parole and Probation of the Department of Public Safety to determine

24  whether Jones was complying with the terms of his probation for multiple counts of child abuse.

25  Id. at 10.

26    The parties also dispute whether ABJ and ADJ were "placed" by the County Defendants

27  in the custody of their father, Defendants Jones.

28

According to Defendants, they did not "place," the children; ABJ and ADJ were released to their natural father as a result of the dismissal of the Second Amended Petition.

Plaintiffs state they were "placed" by the County Defendants in Jones' care, as evidenced by a summary report prepared by DFS Specialist Wuelzer stating that the children were "placed" with their father. ECF No. 47 at 9.

## IV.   LEGAL STANDARD
### A.  Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### B.  Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

8

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## V.    DISCUSSION

### A.  Motion to Dismiss (ECF No. 24)

#### i.  42 U.S.C. § 1983

The Siegel Defendants seek to dismiss Plaintiffs' § 1983 claim against them.

To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1989).

"While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980)).

Defendants argue they are private actors and the burden is on Plaintiffs to allege that Defendants are willful participants in joint action with the state or its agents, which the complaint fails to do. ECF No. 24 at 5-6.

Plaintiffs respond this claim is not pled against the Siegel Defendants and was inadvertently left out of the amended language in the Amended Complaint. ECF No. 33 at 6.

9

The Court therefore grants the Motion to Dismiss Count I against Defendants Boulder II De, LLC, d/b/a Siegel Suites Boulder 2, The Siegel Group Nevada, Inc., d/b/a The Siegel Group, and Boulder II LV Holdings, LLC.

### ii. *Negligent Infliction of Emotional Distress*

Defendant seek to dismiss Plaintiffs' negligent infliction of emotional distress claim against them.

"Under Nevada law, only a 'bystander' may bring a claim for negligent infliction of emotional distress." Beckman v. Match.com, LLC, 668 F. App'x 759, 759-760 (9th Cir. 2016) (citing Shoen v. Amerco, Inc., 896 P.2d 469, 477 (1995); Olivero v. Lowe, 995 P.2d 1023, 1026–27 (Nev. 2000)). "'Direct victims' of negligence torts may recover for emotional distress as part of their damages award." Id. at 760 (citing Shoen, 896 P.2d at 477).

Ordinary tort principles govern claims for negligent infliction of emotional distress. Therefore, a defendant is not liable if his negligence was not the proximate cause of the plaintiff's emotional distress. State v. Eaton, 710 P.2d 1370, 1376 (Nev. 1985), overruled on other grounds by State ex rel. Dep't of Transp. v. Hill, 963 P.2d 480 (Nev. 1998). Further, "the plaintiff must prove that the shock of witnessing the harm was the proximate cause of his or her emotional distress." Id. (citation omitted). "Plaintiff's burden of proving causation in fact should not be minimized. The emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim." Id. (internal quotations and citation omitted). "The defendant must not only have proximately caused the victim's injuries, but he must also be primarily liable for them," as in the victim's own negligence may not exceed that of the defendant. Id. at 1377. Further, the harm must be reasonably foreseeable by the ordinary person under the circumstances. Id. at 1377 n.11.

In order to determine whether the emotional injury was "reasonably foreseeable," courts evaluate three factors. The bystander plaintiff must be "closely related to the victim of an accident, be located near the scene of the accident, and suffer a shock resulting from direct emotional impact

stemming from the sensory and contemporaneous observance of the accident." <u>Crippens v. Sav on Drug Stores</u>, 961 P.2d 761, 762 (1998) (citing <u>State v. Eaton</u>, 710 P.2d 1370, 1377-78 (1985)). "[I]t is not the precise position of plaintiff or what the plaintiff saw that must be examined. The overall circumstances must be examined to determine whether the harm to the plaintiff was reasonably foreseeable. Foreseeability is the cornerstone of [the] test for negligent infliction of emotional distress." <u>Id.</u> at 762-63 (citation omitted).

Defendants argue their alleged conduct in failing to adhere to internal protocols did not cause the abuse and death of ADJ, therefore Plaintiff has failed to state a claim.

Plaintiffs respond that negligence is a jury question and that they have adequately alleged that both ABJ and ADJ suffered physical impacts as a result of Defendants' negligence, and ABJ has alleged emotional distress and shock. ECF No. 33 at 7. They have also alleged facts for bystander recovery in ABJ witnessing her brother's alleged abuse and death. <u>Id.</u>

The Court finds Plaintiffs have stated a plausible claim for negligent infliction of emotional distress. They allege that the Siegel Defendants failed to adhere to their internal protocols and that had they done so, they would have discovered that Jones and his wife were violating their policies, they would have been evicted, and it would have been discovered that ADJ showed obvious signs of abuse. It is enough with regard to the current motion that Plaintiffs have pled a prima facie case of negligent infliction of emotional distress.

Therefore, the Motion to Dismiss is denied as to the fifth claim.


### iii.   Wrongful Death

Defendants seek to dismiss Plaintiffs' wrongful death claim against them.

Under Nevada law, "[w]hen the death of any person ... is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death ..." NRS 41.085(2).

NRS 651.015 governs civil liability of innkeepers for the death or injury of a person on the premises that was caused by someone other than an employee. Innkeepers are *not* civilly liable for such death or injury *unless*: "(a) The wrongful act which caused the death or injury was

11

foreseeable; and (b) There is a preponderance of evidence that the owner or keeper did not exercise due care for the safety of the patron or other person on the premises." Nev. Rev. Stat. Ann. § 651.015(1). The statute further states that an innkeeper *is* civilly liable for such death or injury if: "(a) The wrongful act which caused the death or injury was foreseeable; and (b) The owner or keeper failed to take reasonable precautions against the foreseeable wrongful act." Nev. Rev. Stat. Ann. § 651.015(2).

Whether the wrongful act was foreseeable and whether the innkeeper had a duty to take reasonable precautions against the wrongful act of the perpetrator of the death or injury are legal determinations. Id. The statute further states that a wrongful act is *not* foreseeable unless: "(a) The owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or (b) Prior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice or knowledge of those incidents." Id. at § (3).

"NRS 651.015(3) allows a judge to evaluate evidence of '[p]rior incidents of similar wrongful acts' or any other circumstances related to the exercise of 'due care' when imposing a duty under NRS 651.015(2). This aligns the statute's definition of "foreseeable" with [Doud v. Las Vegas Hilton Corp., 864 P.2d 796 (1993)]'s "totality of the circumstances" approach by allowing a judge to look beyond the existence of 'similar wrongful acts' in determining the existence of a duty." Estate of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc., 265 P.3d 688, 692 (Nev. 2011).

Defendants argue Plaintiff has not alleged they caused the abuse and death of the minor children and that the intentional acts of a third party caused the injuries. ECF No. 24 at 7. Plaintiffs respond that they require discovery as to the full extent of foreseeability and that discovery will reveal incidents of child abuse, domestic violence, and other crimes resulting from overcrowding. ECF No. 33 at 10. They further assert that they plausibly allege Defendants' negligence in failing to provide adequate security created a favorable environment for criminal activity and that the harm upon ABJ and ADJ was foreseeable. Id. at 11. They further assert that if they had complied with their own policies including background checks, they would have discovered the child abuse convictions. Id. at 12-13.

Plaintiffs have stated a plausible claim for relief as to wrongful death. Defendants' assertion that they did not cause the alleged abuse and death and that it was the consequence of a third party is unavailing. NRS 651.015 states that innkeepers may be held liable for the death of another on their property if the wrongful act which caused the death or injury was foreseeable and a preponderance of the evidence indicates the innkeeper did not exercise reasonable care as to the safety of those on the premises. Plaintiffs have alleged that Jones' alleged abuse was foreseeable and that the Siegel Defendants failed to adhere to their own internal protocols which precluded them from discovering the occupancy violations committed by Jones and his wife and the visible evidence of abuse of ADJ. They also alleged that the Defendants failed to keep the premises reasonable safe, including the provision of adequate security. Plaintiffs have satisfied their burden on the Motion to Dismiss.

Accordingly, the Motion to Dismiss is denied as to the fourth claim.

### iv.   Premises Liability

Defendants seek to dismiss Plaintiffs' claim for premises liability against them.

"Generally a premises owner or operator owes entrants a duty to exercise reasonable care . . . but courts may limit that duty." FCH1, LLC v. Rodriguez, 335 P.3d 183, 186 (Nev. 2014) (citing Foster v. Costco Wholesale Corp., 291 P.3d 150, 152 (Nev. 2012)).

"A landlord is not liable for injury caused by the negligent actions of its tenant." FGA, Inc. v. Giglio, 278 P.3d 490, 501 (Nev. 2012) (citing Wright v. Schum, 781 P.2d 1142, 1142–43 (Nev. 1989)). "However, a landlord is still subject to the duty of all persons to 'exercise reasonable care not to subject others to an unreasonable risk of harm.'" Id. (quoting Wright, 781 P.2d at 1143). Thus, while a landlord may not be liable because of his status as a landlord, he may still be liable for his own, individual negligence. Id.

Defendants argue the complaint should be dismissed in its entirety against Defendants because a landlord is not liable for injury caused by the negligent actions of its tenant and Defendants' failure to perform a background check and monthly maintenance did not cause the child abuse. ECF No. 24 at 8-9 (citing Giglio, 278 P.3d at 501).

Plaintiffs respond by citing to their arguments regarding the wrongful death claim and the standard under NRS 651.015 and further assert that had Defendants followed their own policies, the harm endured by ABJ and ADJ would not have continued. ECF No. 33 at 14-15.

Plaintiffs have plausibly stated a claim for relief. They allege that the Siegel Defendants owed ABJ and ADJ a duty of care to keep the premises safe, that they failed to follow their internal protocols and that doing so would have prevented the abuse, that ABJ and ADJ were customer invitees, that they were harmed due to a dangerous condition that Defendants had actual and constructive notice of, and they failed to enact proper safeguards. Contrary to Defendants' assertion, Plaintiffs are not arguing that Defendants be held liable for Jones' negligence, but that the Defendants' own negligent conduct contributed to the harm.

Therefore, the Court denies the Motion to Dismiss the seventh claim.

### v. Negligent Hiring, Supervision, and Failure to Warn; Vicarious Liability; Negligent Security; and Negligence

Defendant seek to dismiss Plaintiffs' negligent hiring, supervision, and failure to warn claim, as well as their claims for vicarious liability, negligent security, and negligence.

> [The Nevada Supreme Court] has held that an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." The tort of negligent training and supervision imposes direct liability on the employer if (1) the employer knew that the employee acted in a negligent manner, (2) the employer failed to train or supervise the employee adequately, and (3) the employer's negligence proximately caused the plaintiffs injuries. When liability is based on negligent supervision instead of respondeat superior, whether the employee acted within the course and scope of employment is immaterial.

Helle v. Core Home Health Servs. of Nevada, 238 P.3d 818, *3 (Nev. 2008) (footnotes omitted).

"Nevada law provides that, when a defendant has actual knowledge of a specific harm, that defendant has a duty to warn known, foreseeable victims of known, foreseeable harms." Beckman v. Match.com, LLC, 668 F. App'x 759, 760 (9th Cir. 2016) (citing Ducey v. United States, 830

F.2d 1071, 1072 (9th Cir. 1987); Elko Enters., Inc. v. Broyles, 779 P.2d 961, 964 (1989) (per curiam); Mangeris v. Gordon, 580 P.2d 481, 483 (1978)).

Vicarious liability, or liability based on the doctrine of respondeat superior, is a two-part analysis:

> Respondeat superior liability attaches only when the employee is under the control of the employer and when the act is within the scope of employment.... Therefore, an actionable claim on a theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment.

Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1179 (Nev. 1996) (quoting Molino v. Asher, 618 P.2d 878, 879 (Nev. 1980)) (quotation marks omitted). The jury determines whether an employee acted within the scope of her employment when she committed the wrongful act. See Nat'l Convenience Stores v. Fantauzzi, 584 P.2d 689, 692 (Nev. 1978) ("Whether an employee was engaged in the scope of employment when the tortious act occurred raises an issue of fact which is within the province of a jury.").

"To prove a negligent-security claim, a plaintiff must show that: '(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages.'" Symeonidis v. AMC, LLC, No. 71072, 2017 WL 6513640, at *1 (Nev. App. Dec. 11, 2017) (quoting Doud, 864 P.2d at 798).

"To prevail on a negligence theory, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." Scialabba v. Brandise Const. Co., 921 P.2d 928, 930 (Nev. 1996) (citation omitted). "In a negligence action, summary judgment should be considered with caution." Id. (citation omitted). "In order to establish entitlement to judgment as a matter of law, a moving defendant must show that one of the elements of the plaintiff's prima facie case is clearly lacking as a matter of law." Id. (internal quotation and citation omitted).

Defendants argue that Plaintiffs have not alleged that Defendants' failure to follow its internal protocols caused the alleged abuse and death. ECF No. 24 at 9-10. Assuming the failures

occurred, the third-party actor's conduct is a superseding cause of the children's' injuries. Id. at 10. Further, Defendants are not mandatory reporters under Nevada law as innkeepers/landlord and so they could not breach any duty they did not owe. Id. at 11-12.

Plaintiffs respond Defendants have a special relationship with ABJ and ADJ based upon their innkeeper status and Defendants ignore the implications of the allegations that they failed to follow internal protocols on the negligence inquiry. ECF No. 33 at 15. Further, Defendants are responsible for the actions of their employees. Id.

The Court finds that Plaintiffs have stated plausible claims for relief as to the Negligent Hiring, Supervision, and Failure to Warn, Vicarious Liability, Negligent Security, and Negligence claims. Defendants' argument that they are not mandatory reporters and so had no duty to report the alleged abuse is inapposite. Plaintiffs have alleged Defendants' own negligence caused the alleged harm. That is all they need do at this juncture.

Accordingly, the Motion to Dismiss is denied as to claims eight, nine, ten, and eleven.

*vi.*   *NRS 86.371*

Defendants argue the complaint should be dismissed as against The Siegel Group Nevada Inc., and Boulder II LV Holdings, LLC pursuant to NRS 86.371.

NRS 86.371 states that "Unless otherwise provided in the articles of organization or an agreement signed by the member or manager to be charged, no member or manager of any limited-liability company formed under the laws of this State is individually liable for the debts or liabilities of the company."

"A member of a limited-liability company is not a proper party to proceedings by or against the company, except where the object is to enforce the member's right against or liability to the company." Nev. Rev. Stat. § 86.381.

"NRS 86.371 is not intended to shield members or managers from liability for personal negligence." Gardner on Behalf of L.G. v. Eighth Judicial Dist. Court in & for Cty. of Clark, 405 P.3d 651, 652 (Nev. 2017). "A plain reading of NRS 86.371 protects members and managers only

/ / /

1    from individual liability resulting from the debts or liabilities of the LLC, not liabilities incurred

2    as a result of individual acts." Id. at 734.

3           Defendants argue Plaintiffs' complaint against The Siegel Group Nevada Inc., and Boulder

4    II LV Holdings, LLC should be dismissed pursuant to NRS 86.371 because the complaint is silent

5    as to whether these entities were owners/operators of the subject premises, therefore they cannot

6    be individually liable for the debts/liabilities of the alleged owner/operator. ECF No. 24 at 12. The

7    only allegations are that these two entities are the holding companies of Boulder II, De, LLC. Id.

8    at 12-13.

9           Plaintiffs respond that they have substantively alleged the Defendants' involvement and

10   more discovery is needed to determine the exact contours of the relationship between the three

11   entities. ECF No. 33 at 16-17. The statutes cited by Defendants do not preclude liability for the

12   acts and omissions alleged but operate to prevent standalone liability based solely on the corporate

13   relationship between these entities. Id. at 16.

14          The Court agrees with Defendants that as alleged, Plaintiff has not indicated that either the

15   Siegel Group Nevada Inc. or Boulder II LV Holdings, LLC owned or operated the premises at

16   issue, and therefore Plaintiffs have failed to allege that the individual liability of these entities is

17   divorced from the liability of Boulder II, De, LLC as the alleged owner/operator of the subject

18   premises. Without alleging that these entities are liable for their personal negligence, Plaintiffs are

19   foreclosed by NRS 86.371 from asserting liability against them on the basis of  Boulder II, De,

20   LLC's liability as owner/operator.

21          The Court therefore grants the Motion to Dismiss the claims against The Siegel Group

22   Nevada Inc. and Boulder II LV Holdings, LLC, but grants Plaintiffs leave to amend the complaint

23   to assert allegations sufficient to state a claim for liability based upon personal negligence.

24

25          **B.  Motion for Summary Judgment (ECF No. 41)**

26          *i.       42 U.S.C. § 1983*

27          The County Defendants seek summary judgment on Plaintiffs' § 1983 claims.

28   / / /

"The 'general rule' is that a state actor is not liable under the Due Process Clause 'for its omissions.'" Pauluk v. Savage, 836 F.3d 1117, 1122 (9th Cir. 2016) (quoting Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000)). "There are two exceptions to this general rule: '1) when a "special relationship" exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with "deliberate indifference" to a "known or obvious danger" (the state-created danger exception).'" Id. (quoting Patel v. Kent Sch. Dist, 648 F.3d 965, 971–72 (9th Cir. 2001)).

The special relationship exception applies when "when a state 'takes a person into its custody and holds him there against his will.'" Patel, 648 F.3d at 972 (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989)). This includes "'incarceration, institutionalization, or other similar restraint of personal liberty.'" Id. (quoting DeShaney, 489 U.S. at 200). "Under this exception, the state's constitutional duty arises 'not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which [the State] has imposed on his freedom.'" Id. "In other words, the person's substantive due process rights are triggered when the state restrains his liberty, not when he suffers harm caused by the actions of third parties." Id. (citing DeShaney, 489 U.S. at 195, 200). "The special-relationship exception does not apply when a state fails to protect a person who is not in custody." Id. (citing DeShaney, 489 U.S. at 195-202).

"Under the state-created danger doctrine, a state actor can be held liable for failing to protect a person's interest in his personal security or bodily integrity when the state actor affirmatively and with deliberate indifference placed that person in danger. The doctrine holds state actors liable 'for their roles in creating or exposing individuals to danger they otherwise would not have faced.'" Id. (quoting Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006)).

"To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe . . . environment. First, a plaintiff must show that the state engaged in 'affirmative conduct' that placed him or her in danger." Pauluk, 836 F.3d at 1124 (quoting Patel, 648 F.3d at 974). "This 'affirmative conduct' requirement has several components.

18

1    A plaintiff must show not only that the defendant acted 'affirmatively,' but also that the affirmative

2    conduct placed him in a 'worse position than that in which he would have been had [the state] not

3    acted at all.'" Id. at 1125 (quoting Johnson v. City of Seattle, 474 F.3d 634, 641 (9th Cir. 2007)

4    (citing Kennedy, 439 F.3d at 1063). "The affirmative act must have exposed the plaintiff to 'an

5    actual, particularized danger,' and the resulting harm must have been foreseeable. Id. (citing

6    Kennedy, 439 F.3d at 1063). "Second, the state actor must have acted with 'deliberate indifference'

7    to a 'known or obvious danger.'" Id. (citing Patel, 648 F.3d at 974). "'Deliberate indifference'

8    requires a 'culpable mental state' more than 'gross negligence.'" Id.

9    Defendants argue there was no special relationship between the County Defendants and

10   ABJ and ADJ at the time of the abuse and death because ABJ and ADJ were not in protective

11   custody or placed in foster care after June 8, 2016 when they were placed with their father, and the

12   allegations state the harm occurred after this date. ECF No. 41 at 8-9. Additionally, government

13   response to a report of abuse does not create a special relationship. Id. at 9. Further, Plaintiffs do

14   not and cannot allege that the County Defendants created the danger or created or exposed ABJ

15   and ADJ to a danger they would not have otherwise faced and DeShaney v. Winnebago Cnty.

16   Dep't of Soc. Servs., 489 U.S. 189 (1989) is directly on point. Id. at 9-11.

17   Plaintiffs respond that the County Defendants created the danger when DFS Specialist

18   Wuelzer failed to apprise the Court at the hearing at which the children were ordered released to

19   Jones, that the Deputy District Attorney was misrepresenting the nature of Jones' previous

20   conviction for child abuse and neglect, and that Judge Hardcastle and another deputy district

21   attorney had previously found that Jones was not a placement option. ECF No. 47 at 11-12. Further,

22   no attorney was present at the hearing to represent ADJ and ABJ in violation of Nevada law, and

23   no attorney was present on behalf of Plaintiff Thomas. Id. at 11-12. DFS Specialist Wuelzer

24   represented both the county and the children at this hearing, and "her silence and acquiescence to

25   series of wrong representations resulted in the Court directing the release of A.D.J. and A.B.J. to

26   Jones." Id. at 12.

27   Further, Plaintiffs argue that DeShaney is distinguishable because the children had never

28   previously been in Jones' custody and were not removed from Plaintiff Thomas' care because of

19

abuse but rather, for inadequate supervision. Id. Thus, Defendants created the danger and put ABJ and ADJ in a worse position than if they had not acted at all. Id. They had an obligation to ensure placement options before the Court were appropriate and that all relevant information was provided to the Court. Id. at 12-13. Further, no efforts were taken to determine the level of supervision Jones would provide, nor whether it would be appropriate or safe for the children to be placed with him. Id. at 13.

Plaintiffs further assert there was deliberate indifference because as of April 25, 2016, the County Defendants completed a background check on Latoya Williams-Miley (stepmother to ADJ and ABJ) and Jones, which revealed they both had physical risk abuse claims pending against them and only recently regained custody of their eleven children. Id. at 15-16. They argue the County Defendants "had an obligation to present evidence of Jones' conviction for violation of NRS 200.508 [abuse, neglect, or endangerment of a child], to correct any misinformation presented by any other individuals in this regard, and demand an evidentiary hearing before allowing the children to be released to him." Id. at 16. NRS 432B.555 states that a court shall not without clear and convincing evidence that no physical or psychological harm to the child will result, release a child to a person who has been convicted of violating NRS 200.508. Defendants knew Jones had been convicted of felony child abuse and failed to adequately apprise the Court. Id. at 16.

Additionally, Plaintiffs respond that Defendants had a special relationship with ABJ and ADJ; they intervened on their behalf, which triggered a duty to find them a safe placement option, not one they knew was inappropriate. Id. at 14. "[T]hey were wards of the State from the time of DFS removed them from Thomas' custody on April 20, 2016, through the time DFS failed to prevent their release from Child Haven to Jones on June 8, 2016." Id. at 17.

Defendants reply that Plaintiffs have raised no disputed material facts in their opposition, and it is undisputed that ABJ and ADJ were not in the custody/care of Defendants after June 8, 2016. ECF No. 49 at 2-3. Further, it was Deputy District Attorney Griffy who requested the petition against Defendant Jones be dismissed. Id. at 4. That the children had never lived with Jones before is immaterial because he is their natural father and his parental rights were never terminated. Id. Further, Defendants argue there is no genuine dispute that Hearing Master Gibson was aware of

20

Jones' prior conviction as evidenced by the "Second Amended Petition, various hearings, representations made and positions taken by DDA Griffy, and the Order he signed dismissing the Petition and ordering the release of A.D.J. and A.B.J. to their father." Id. at 6. "County Defendants are not liable for what DDA Griffy and/or the Family Court said and did as to the pending Petition against Jones, including its dismissal and the release of A.D.J. and A.B.J. to their father." Id. at 7. Further, Defendants assert that Plaintiffs' reliance on state statutes is misplaced because the statutes do not support their claims; the statute governs what the Court must do and even if the children had an attorney, the petition was dismissed at the behest of the Deputy District Attorney, and the children's attorney could not have subsequently forced the case to proceed. Id. at 11-12. Finally, NRS 432B.420(2), like NRS 432.500(1), does not support a § 1983 claim. Id. at 12.

The Court finds it is undisputed that ADJ and ABJ were released to their father's care as a result of a court order. See ECF No. 43-6 at 4. It is also undisputed that the court order releasing the children to Defendant Jones acknowledged Jones' previous conviction for child abuse, neglect, or endangerment, and the presumption that he could not care for ABJ and ADJ as a consequence of that conviction had been overcome in another case, leading to the conclusion that it had also been overcome with regard to ABJ and ADJ. Id. at 2. It is also undisputed that ABJ and ADJ were released to their father's care pursuant to the court order on June 8, 2016, and that their case was closed the same day. ECF No. 43-1 at 8. The Court finds that these undisputed material facts necessarily lead to a finding that the County Defendants did not violate ABJ and ADJ's substantive due process rights, and therefore that summary judgment is warranted in favor of the County Defendants.

As an initial matter, the County Defendants are not liable for their "omissions." Thus, the Court must consider whether they fall under the exception to this general rule, either because a special relationship existed between Defendants and ABJ and ADJ at the time of the alleged abuse, or because they affirmatively placed ABJ and ADJ in danger.

Regarding the special relationship exception, the alleged abuse and resultant death occurred after ABJ and ADJ had been released to their father and after the County Defendants had closed their case. ABJ and ADJ were thus not in the County Defendants' "custody" at the time

they suffered harm, and "the special-relationship exception does not apply when a state fails to protect a person who is not in custody." <u>Patel</u>, 648 F.3d at 972 (internal citations omitted). Plaintiffs essentially argue that because ABJ and ADJ were in the custody of the state from April 20, 2016 "through the time DFS failed to prevent their release from Child Haven to Jones on June 8, 2016," they maintained a special relationship with ABJ and ADJ throughout the time they were in their father's care. The material inquiry here is not the relationship between ABJ and ADJ and the County Defendants before the alleged abuse, but the relationship at the time the abuse occurred. Once the County Defendants terminated ABJ and ADJ's case as a result of the court order, the children were no longer "in custody," and therefore no special relationship could exist between the children and the County Defendants. This exception does not therefore apply.

Regarding the "state-created danger" exception, Plaintiffs fail to satisfy the first prong of that exception, because they fail to show that the County Defendants engaged in "affirmative conduct" that placed ABJ and ADJ in danger. Plaintiffs argue that DFS Specialist Wuelzer failed to alert Hearing Master Gibson of Jones' previous child abuse conviction, or that Judge Hardcastle and a previous deputy district attorney had found Jones to be an unsuitable placement for ABJ and ADJ. But the record clearly shows that Hearing Master Gibson was aware of this previous conviction; it is explicitly referenced in his recommendation and order. Indeed, the minutes from that hearing indicate that it was Deputy District Attorney Griffy who apprised Hearing Master Gibson that the presumption that ABJ and ADJ could not be released to Jones due to his conviction had been overcome with regard to his other eleven children, who had recently been returned to him and to ABJ and ADJ's stepmother. DFS Specialist Wuelzer's notes also indicate that when she asked if Jones needed to be fingerprinted for a background check and whether his home needed to be checked, Griffy indicated Jones was a "nonoffending parent" and ABJ and ADJ should be released to him. ECF No. 47-1 at 14.

Thus, even if DFS Specialist Wuelzer did nothing to apprise the Court of Jones' prior conviction, her failure to do so had no impact, because the Court was already aware, and the Deputy District Attorney recommended the petition be dismissed. Thus, Plaintiffs have failed to show that Defendants engaged in 'affirmative conduct' that placed ABJ and ADJ in danger. It was

known to Hearing Master Gibson as early as May 11, 2016 that Jones had a conviction for child abuse. There was therefore no "affirmative conduct" taken by the County Defendants that put ABJ and ADJ in a "worse position than that in which [they] would have been had [the County Defendants] not acted at all." Indeed, Defendants' argument that they did not "place" ABJ and ADJ is vital on this point. There was no "affirmative conduct" taken by the County Defendants at all that led to ABJ and ADJ's release to Jones. It was the decision and order of Hearing Master Gibson that led to their release to Defendant Jones and not any affirmative (or even omissive) conduct of the County Defendants. This is not a scenario in which the County Defendants maintained custody of the children and placed them in Jones' care once they had been removed from their mother's care. Those circumstances might lead to another conclusion, as Defendants would have had both a "special relationship" with ABJ and ADJ, but also could have been said to take "affirmative conduct" in placing them with Jones, thereby potentially putting the children in the care of a convicted child abuser, which would have been a worse position than they had been in before. But those are not the facts here. The Deputy District Attorney decided to dismiss the petition against Jones and Hearing Master Gibson ordered the children released to him accordingly. The County Defendants took no "affirmative conduct" at all that can be said to have exposed ABJ and ADJ to 'an actual, particularized, danger' and foreseeable harm.

Therefore, because ABJ and ADJ were allegedly harmed by Defendant Jones, and because state actors are not liable under the Due Process Clause for their omissions, Plaintiffs must prove that either the special relationship or state-created danger exceptions apply to these Defendants. For the reasons stated *supra*, they have failed to do so.

The Court therefore grants the Motion for Summary Judgment as to Count I in favor of Carole Falcone, Paula Hammack, and County of Clark.


### ii.    42 U.S.C. § 1983 Municipal Liability

"If no constitutional violation occurred, the municipality cannot be held liable . . . ." Long v. City & Cty. of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007). See also Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1088 n.3 (9th Cir. 2000) (noting that a finding that there had been no

constitutional violation by police officers would necessarily dispose of claims against police department).

Defendants argue that for the same reason the individual liability under § 1983 fails, it fails with regard to municipal liability, because there was no violation of a substantive due process right. ECF No. 41 at 11. Therefore, allegations about policy are irrelevant because ABJ and ADJ did not have a special relationship with the state and the state did not create or expose them to danger. Id. at 11-12.

Plaintiffs respond substantively, stating Clark County failed to adequately train its workers to adequately familiarize themselves with cases before custody hearings. ECF No. 47 at 17-18. When the case was transferred from DFS Case Worker Scott to DFS Specialist Wuelzer, there was a breakdown in communication that resulted in the children being placed with Jones. Id. at 18.

Because the Court has already found that the County Defendants did not violate Plaintiffs' constitutional rights, the Motion for Summary Judgment is granted as to Count II in favor of Paula Hammack and County of Clark.

### iii.     State Law Claims

The County Defendants seeks summary judgment on the state law claims asserted against them on the basis that they did not owe Plaintiffs a duty of care.

"Whether a defendant owes a plaintiff a duty of care is a question of law." Scialabba, 921 P.2d at 930 (citation omitted). "As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person." Id. (citation omitted). However, a duty may be imposed where a "special relationship" exists, including "landowner-invitee, businessman-patron, employer-employee, school district-pupil, hospital-patient, and carrier-passenger." Id. Accordingly, "the element of control is the pivotal factor in the determination of liability arising from certain relationships." Id.

Defendants argue that regarding claims three through five (negligence, wrongful death, negligent infliction of emotional distress), the County Defendants did not owe Plaintiffs a duty

1   because Plaintiffs have not alleged a special relationship between the County Defendants and ABJ

2   and ADJ. ECF No. 41 at 12-13.

3           Plaintiffs respond there was a special relationship between the children and the County

4   Defendants which gave rise to a duty of care. ECF No. 47 at 19.

5           There is no genuine dispute of material fact that ABJ and ADJ's harm occurred while they

6   were in the care of Defendant Jones, not while they were in the County Defendants' custody.

7   Because the children were not in the County Defendants' custody, the Defendants had no "control"

8   over them. As "the element of control" is the most important factor in determining liability on the

9   basis of a special relationship, and Defendants had none when ABJ and ADJ suffered harm, as a

10  matter of law, they did not owe ABJ and ADJ a duty of care.

11          Therefore, because Plaintiffs have alleged, *inter alia*, that it was the County Defendants'

12  negligence that caused the wrongful death of ADJ, that their negligence led to the abuse suffered

13  by both ABJ and ADJ while in the care of Defendant Jones, and that their negligence led to ABJ's

14  emotional distress in witnessing the death of her brother, ADJ, they must also prove that

15  Defendants owed ABJ and ADJ a duty of care. Because the Court has found as a matter of law that

16  the Defendants did not owe ABJ and ADJ a duty of care, the negligence, wrongful death, and

17  negligent infliction of emotional distress claims necessarily fail.

18          Therefore, the Court grants the Motion for Summary Judgment on claims three, four, and

19  five in favor of Clark County, Carole Falcone, Roe Clark County Dept. of Services Employee XI

20  and Paula Hammack.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

## VI.     CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Boulder II De, LLC, Boulder II LV Holdings, LLC, and The Siegel Group Nevada, Inc.'s Motion to Dismiss (ECF No. 24) is **GRANTED** in part and **DENIED** in part. The Court **DISMISSES** The Siegel Group Nevada Inc. and Boulder II LV Holdings, LCC without prejudice. Plaintiffs are granted leave to amend the complaint to assert allegations sufficient to state a claim for liability as to these defendants. All remaining claims shall proceed against Defendant Boulder II De, LLC.

**IT IS FURTHER ORDERED** that Defendants County of Clark, Carole Falcone, and Paula Hammack's Motion for Summary Judgment (ECF No. 41) is **GRANTED**. Defendants County of Clark, Carole Falcone, and Paula Hammack are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Motions for Leave to File Exhibits Under Seal (ECF Nos. 42, 48, 50) are *GRANTED*, *nunc pro tunc*.

**IT IS FURTHER ORDERED** that this case remains stayed pursuant to this Court's existing Order, (ECF No. 59). Upon resolution of the related criminal trial, the parties shall within fourteen (14) days of the entry of judgment in that case submit a revised discovery order.

DATED: <u>May 30, 2020</u>.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**